# DeGANAY v. LEDERER, COLLECTOR OF INTERNAL REVENUE.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 319.　Argued April 23, 1919.—Decided June 9, 1919.

Stocks and bonds issued by domestic corporations, and mortgages secured on domestic real estate, were owned by an alien nonresident but were in the hands of an agent in this country, empowered to sell, assign and transfer any of them and to invest and reinvest the proceeds as it might deem best in the management of the business affairs of the owner. *Held*, that the income was subject to tax under the Income Tax Law of October 3, 1913, c. 16, § II, A, subdiv. 1, 38 Stat. 166, as income from "property owned . . . in the United States by persons residing elsewhere." P. 380.

Bonds, mortgages and certificates of stock are ordinarily regarded as "property"; and that term is presumed to have been used in the statute with its ordinary sense, nothing to the contrary appearing. *Id.*

It is well settled that such property may have a situs for taxation at a place other than the owner's domicile. P. 381.

THE case is stated in the opinion.

*Mr. James Wilson Bayard* for DeGanay:

Intangible personal property has its situs at the domicile of the owner and, in the absence of special statutory provisions, is not subject to taxation elsewhere. *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *State Tax on Foreign Held Bonds,* 15 Wall. 300; *Tappan* v. *Merchants' National Bank,* 19 Wall. 490; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Provident Savings Association* v. *Kentucky,* 239 U. S. 103; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54; *Buck* v. *Beach,* 206 U. S. 392.

There are no special words in this statute which indicate the intent to reach any particular classes of property.

It would follow, therefore, that the words "property owned in the United States" should be taken in their ordinary legal meaning, and that they should not be extended to include intangible property owned by an alien not resident in the United States; because such intangible personal property, under the general rule we have above quoted, has for its *situs* the domicile of that alien nonresident. 30 Op. Atty. Gen. 230; *id.* 273. The provisions of the act should not be extended beyond the clear import of its terms. *Gould* v. *Gould*, 245 U. S. 151. See also the instructions of the Commissioner of Internal Revenue of August 12, 1914, 16 T. D., Int. Rev., 118, and December 28, 1914, *id.* 305, following the above opinions of the Attorney General, and the Revenue Acts of September 8, 1916, § 1, 39 Stat. 756, and February 24, 1919, § 213 (c), 40 Stat. 1057, 1066.

The plaintiff is subject to taxation in the country of her residence and the presumption is against a construction which would result in double taxation.

*Mr. Assistant Attorney General Brown*, with whom *Mr. W. C. Herron* was on the brief, for Lederer:

The brief reviewed the following cases: *Savings & Loan Society* v. *Multnomah County*, 169 U. S. 421; *State Tax on Foreign Held Bonds*, 15 Wall. 300; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *United States* v. *Erie Ry. Co.*, 106 U. S. 327; *Railroad Co.* v. *Collector*, 100 U. S. 595; *United States* v. *Railroad Co.*, 17 Wall. 322; *New Orleans* v. *Stempel*, 175 U. S. 309; *Bristol* v. *Washington County*, 177 U. S. 133; *Eidman* v. *Martinez*, 184 U. S. 578; *Blackstone* v. *Miller*, 188 U. S. 189; *Corry* v. *Baltimore*, 196 U. S. 466; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Buck* v. *Beach*, 206 U. S. 392; *Burke* v. *Wells*, 208 U. S. 14; *Walker* v. *Jack*, 88 Fed. Rep. 576; *Selliger* v. *Kentucky*, 213 U. S. 200; *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194; *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63; *Liver-*

*pool &c. Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346; *Hawley* v. *Malden,* 232 U. S. 1; *Wheeler* v. *New York,* 233 U. S. 434; *Rogers* v. *Hennepin County,* 240 U. S. 184; *Bullen* v. *Wisconsin,* 240 U. S. 625; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54; *Iowa* v. *Slimmer,* 248 U. S. 115; *Willing* v. *Perot,* 5 Rawle, 264; *Attorney General* v. *Bouwens,* 4 M. & W. 171; *Commissioner of Stamps* v. *Hope* [1891], A. C. 476; *New York Breweries Co.* v. *Attorney General* [1899], A. C. 62; *Lecouturier* v. *Ray* [1910], A. C. 262; *Rex* v. *Lovitt* [1911], A. C. 212; *Royal Bank of Canada* v. *Rex* [1913], A. C. 283; *Inland Revenue Commissioners* v. *Muller & Company's Margarine* [1901], A. C. 217.

MR. JUSTICE DAY delivered the opinion of the court.

The Act of October 3, 1913, c. 16, § II, A, subdivision 1, 38 Stat. 166, provides:

"That there shall be levied, assessed, collected and paid annually upon the entire net income arising or accruing from all sources in the preceding calendar year to every citizen of the United States, whether residing at home or abroad, and to every person residing in the United States, though not a citizen thereof, a tax of 1 per centum per annum upon such income, except as hereinafter provided; and a like tax shall be assessed, levied, collected, and paid annually upon the entire net income from all property owned and of every business, trade, or profession carried on in the United States by persons residing elsewhere."

Under this statutory provision a question arose as to the taxability of income from certain securities of Emily R. DeGanay, a citizen and resident of France. The District Court of the United States for the Eastern District of Pennsylvania held the income from the securities taxable. 239 Fed. Rep. 568. The case is here upon certificate from the Circuit Court of Appeals, from which it appears: That Emily R. DeGanay is a citizen of France, and re-

sides in that country. That her father was an American citizen domiciled in Pennsylvania, and died in 1885, having devised one-fourth of his residuary estate, consisting of real property, to the Pennsylvania Company for Insurance on Lives and Granting Annuities, in trust to pay the net income thereof to her. She also inherited from her father a large amount of personal property in her own right free from any trust. This personal property is invested in stocks and bonds of corporations organized under laws of the United States and in bonds and mortgages secured upon property in Pennsylvania. Since 1885 the Pennsylvania Company has been acting as her agent under power of attorney, and has invested and reinvested her property, and has collected and remitted to her the net income therefrom. The certificates of stocks, bonds and mortgages had been and were in 1913 in the Company's possession in its offices in Philadelphia. The Company made a return of the income collected for the plaintiff for the year 1913 both from her real estate, which is not in controversy here, and her net income from corporate stocks and bonds and the bonds and mortgages held by her in her own right. The tax was paid under protest and recovery was sought by the proper action.

The question certified is limited to the net income collected by virtue of the power of attorney from the personal property owned by the plaintiff in her own right.

The power of attorney, which is attached to the certificate, authorizes the agent:

"To sell, assign, transfer any stocks, bonds, loans, or other securities now standing or that may hereafter stand in my name on the books of any and all corporations, national, state, municipal or private, to enter satisfaction upon the record of any indenture or mortgage now or hereafter in my name, or to sell and assign the same and to transfer policies of insurance, and the proceeds,

also any other moneys to invest and reinvest in such securities as they may in their discretion deem safe and judicious to hold for my account; to collect and receipt for all interest and dividends, loans, stocks, or other securities now or hereafter belonging to me, to endorse checks payable to my order and to make or enter into any agreement or agreements they may deem necessary and best for my interest in the management of my business and affairs, also to represent me and in my behalf, to vote and act for me at all meetings connected with any company in which I may own stocks or bonds or be interested in any way whatever, with power also as attorney or attorneys under it for that purpose to make and substitute, and to do all lawful acts requisite for effecting the premises, hereby ratifying and confirming all that the said attorney or substitute or substitutes shall do therein by virtue of these presents."

The question certified is: "If an alien non-resident own stocks, bonds, and mortgages secured upon property in the United States or payable by persons or corporations there domiciled; and if the income therefrom is collected for and remitted to such non-resident by an agent domiciled in the United States; and if the agent has physical possession of the certificates of stock, the bonds and the mortgages; is such income subject to an income tax under the Act of October 3d, 1913?"

The question submitted comes to this: Is the income from the stock, bonds and mortgages, held by the Pennsylvania Company, derived from property owned in the United States? A learned argument is made to the effect that the stock certificates, bonds and mortgages are not property, that they are but evidences of the ownership of interests which are property; that the property, in a legal sense, represented by the securities, would exist if the physical evidences thereof were destroyed. But we are of opinion that these refinements are not decisive of

the congressional intent in using the term "property" in this statute. Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them. To the general understanding and with the common meaning usually attached to such descriptive terms, bonds, mortgages, and certificates of stock are regarded as property. By state and federal statutes they are often treated as property, not as mere evidences of the interest which they represent. In *Blackstone* v. *Miller*, 188 U. S. 189, 206, this court held that a deposit by a citizen of Illinois in a trust company in the City of New York was subject to the transfer tax of the State or New York and said: "There is no conflict between our views and the point decided in the case reported under the name of *State Tax on Foreign Held Bonds*, 15 Wall. 300. The taxation in that case was on the interest on bonds held out of the State. Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon* v. *Hooker*, 177 Massachusetts, 335, 337."

The Court of Appeals of New York, recognizing the same principle, treated such instruments as property in *People ex. rel. Jefferson* v. *Smith*, 88 N. Y. 576, 585:

"It is clear from the statutes referred to and the authorities cited and from the understanding of business men in commercial transactions, as well as of jurists and legislators, that mortgages, bonds, bills and notes have for many purposes come to be regarded as property and not as the mere evidences of debts, and that they may thus have a *situs* at the place where they are found like other visible, tangible chattels."

We have no doubt that the securities, herein involved, are property. Are they property within the United States? It is insisted that the maxim *mobilia sequuntur personam*

applies in this instance, and that the situs of the property was at the domicile of the owner in France. But this court has frequently declared that the maxim, a fiction at most, must yield to the facts and circumstances of cases which require it; and that notes, bonds and mortgages may acquire a situs at a place other than the domicile of the owner, and be there reached by the taxing authority. It is only necessary to refer to some of the decisions of this court. *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *Blackstone* v. *Miller, supra; State Board of Assessors* v. *Comptoir National d'Escompte,* 191 U. S. 388; *Carstairs* v. *Cochran,* 193 U. S. 10; *Scottish Union & National Ins. Co.* v. *Bowland,* 196 U. S. 611; *Wheeler* v. *New York,* 233 U. S. 434, 439; *Iowa* v. *Slimmer,* 248 U. S. 115, 120. Shares of stock in national banks, this court has held, for the purpose of taxation may be separated from the domicile of the owner, and taxed at the place where held. *Tappan* v. *Merchants' National Bank,* 19 Wall. 490.

In the case under consideration the stocks and bonds were those of corporations organized under the laws of the United States, and the bonds and mortgages were secured upon property in Pennsylvania. The certificates of stock, the bonds and mortgages were in the Pennsylvania Company's offices in Philadelphia. Not only is this so, but the stocks, bonds and mortgages were held under a power of attorney which gave authority to the agent to sell, assign, or transfer any of them, and to invest and reinvest the proceeds of such sales as it might deem best in the management of the business and affairs of the principal. It is difficult to conceive how property could be more completely localized in the United States. There can be no question of the power of Congress to tax the income from such securities. Thus situated and held, and with the authority given to the local agent over them, we think the income derived is clearly from property

within the United States within the meaning of Congress as expressed in the statute under consideration. It follows that the question certified by the Circuit Court of Appeals must be answered in the affirmative.

*So ordered.*

MR. JUSTICE MCREYNOLDS took no part in this case.