ERNEST BROOKS, HAROLD WILSON BROOKS, AND WALTER DOUGLAS BROOKS, EXECUTORS, ESTATE OF ERNEST AUGUSTUS BROOKS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32401. Promulgated February 5, 1931.

*James L. Dohr, Esq.,* for the petitioners.
*Frank T. Horner, Esq.,* for the respondent.

72

76

OPINION.

TRAMMELL: The first issue for consideration in this proceeding is whether or not the value of intangible personal property of a non-resident alien decedent, comprising stock in a foreign corporation and bonds of foreign governments, foreign corporations, domestic corporations, and of a domestic municipality, should, for the purpose of the Federal estate tax be included under the facts of this case as a part of the decedent's gross estate, which at the time of his death was "*situated in the United States.*"

The decedent died on October 31, 1924, a resident of Cuba and a citizen of Great Britain. At the time of death he was possessed

of the securities described in detail in our findings of fact and referred to above. The decedent was not engaged in business in the United States, and while the stock certificates and bonds in question were located in New York City, they were not hypothecated or pledged as security for any indebtedness. The securities were not a part of any business localized in the United States.

The pertinent provisions of the Revenue Act of 1924, applicable to this proceeding, are as follows:

SEC. 301. (a) In lieu of the tax imposed by Title IV of the Revenue Act of 1921, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this Act, whether a resident or nonresident of the United States: * * *

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate; * * *

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

*   *   *   *   *   *   *

(b) In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States—

(Specified deductions omitted as not material here.)

(d) For the purpose of Part I of this title, stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States.

The Revenue Act of 1924, which was enacted June 2, 1924, prior to the death of the decedent, in section 301 (a), *supra*, imposes a tax upon the transfer of the net estate of every decedent dying after the enactment of said act, whether a resident or nonresident of the United States, and in section 302 provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, with certain limitations not here material. Subdivision (a) of section 303 provides the method of determining the value of the net estate in the case of a resident with which we are not here concerned. And subdivision (b) of said section provides that in the case of a nonresident the value of the net estate of the decedent shall be determined by making certain specified deductions " from the value of that part of his gross estate which at the time of his death is situated in the United States."

It is clear that section 303 (b) is a direct limitation upon the provisions of section 302 in so far as section 302 is applicable to the

estate of a nonresident decedent, and since the tax is in all cases computed upon the value of the net estate, and since in the case of a nonresident decedent the net estate must be determined upon the basis of that part of the gross estate which is *situated in the United States at the time of the decedent's death*, the first issue in this proceeding resolves itself into the question whether the securities owned by this decedent may, under the circumstances indicated, be considered for the purpose of the estate tax as property "situated in the United States," at the time of his death.

The issue here presented does not involve any question of the power of Congress to impose a transfer or estate tax measured by the value of property of the kinds owned by this decedent, but the question is rather whether Congress has in fact done so. Congress has clearly indicated its intention that the tax shall be determined, in the case of a nonresident decedent, only on the basis of "the value of that part of his gross estate which at the time of his death is situated in the United States." We shall, therefore, restrict our consideration of the issue to the question whether the decedent's securities were property which, at the time of his death, was "situated in the United States."

The respondent has included the value of the decedent's securities as a part of his gross estate because of the fact that the stock certificates and bonds were located in New York City at the date of his death. This position of the respondent rests upon the theory that the stock certificates were something more than mere evidences of the decedent's ownership of an interest in the corporations, and that the bonds were likewise something more than mere evidences of debt; in effect, that the property rights themselves were inseparable from and were constituted by the documents, and had a situs where the documents were located. If this view is sound, as contended by the respondent, it would follow that since the instruments were located in New York City, the securities were property "situated in the United States."

This doctrine has been the subject of judicial consideration in numerous cases, and there is marked conflict in the reported decisions. The principle has been accepted by some courts and rejected by others. The Supreme Court of the United States, in its early decisions, took a contrary view; later the principle was approved, and still later was rejected.

In *Blackstone* v. *Miller*, 188 U. S. 189 (January, 1903), the Court said:

> Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions.

In *De Ganay* v. *Lederer*, 250 U. S. 376 (June, 1919), the Court cited with approval its former decision in *Blackstone* v. *Miller*, and said:

To the general understanding and with the common meaning usually attached to such descriptive terms, bonds, mortgages and certificates of stock are regarded as property. By state and federal statutes they are often treated as property, not as mere evidences of the interest which they represent.

The Court of Appeals of New York, in *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 576 (cited with approval and quoted by the Supreme Court in the *De Ganay* case), treated instruments of the kind here involved as tangible property, saying:

It is clear from the statutes referred to and the authorities cited and from the understanding of business men in commercial transactions, as well as of jurists and legislators, that mortgages, bonds, bills and notes have for many purposes come to be regarded as property and not as the mere evidences of debts, and that they may thus have a situs at the place where they are found like other visible, tangible chattels.

The opposite view, that the exclusive situs of the property in debts is the domicile of the creditors, irrespective of the location of the bonds or paper evidences, was adopted by the Supreme Court in *Railroad Co.* v. *Pennsylvania*, reported under the title "*State Tax on Foreign Held Bonds*," 15 Wall. 300, decided in 1872. In that case the Court in its opinion said (p. 320):

All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.

Substantially the same views were expressed by the Court in *Kirtland* v. *Hotchkiss*, 100 U. S. 491 (October, 1879), wherein the Court cited with approval *State Tax on Foreign Held Bonds, supra*, and said:

That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. Nor is the debt for purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt * * *.

The view that intangibles, such as debts evidenced by bonds or otherwise, have an exclusive situs for the purpose of taxation at the domicile of the creditor or owner, as expressed in *State Tax on*

*Foreign Held Bonds* (1872), *supra*, and in *Kirtland* v. *Hotchkiss* (1879), *supra*, was plainly departed from by the Court in the later case of *Blackstone* v. *Miller* (1903), *supra*, where the Court upheld the right of the State of New York to levy a tax on the transfer by will of certain debts due from residents of New York to the decedent Blackstone, who died domiciled in Illinois. The State of New York had by legislative act created a situs for such property not where the paper evidences of the debt were located or where the creditors were domiciled, but at the place where the debtors were domiciled. The Court sustained the tax without regard to the fact that another State might have had the right to tax at the place the property was situated or where the creditor. was domiciled, and this opinion of the Court for the first time lent support to the doctrine that intangible property had a situs where the paper evidences. thereof were located.

*Blackstone* v. *Miller* was cited and followed by the Court in approving opinions as late as June, 1919 (see *De Ganay* v. *Lederer*, *supra*). However, the doctrine that intangibles may have a taxable situs apart from the domicile of the owner because of the presence of the paper evidences was definitely abandoned and the decision in the *Blackstone* case overruled in *Farmer's Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204 (January, 1930), where the court said:

> *Blackstone* v. *Miller, supra*, and certain approving opinions, lend support to the doctrine that ordinary choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two States may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment * * *. Having considered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. *Blackstone* v. *Miller* no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled.

The specific question whether the mere presence of the paper. evidences of debts constitutes a tax situs of the property at the place where such paper evidences are found was considered by the Court in *Buck* v. *Beach*, 206 U. S. 392. In that case, the State of Indiana sought to tax certain notes which were given and were payable in the State of Ohio, by residents of Ohio to a nonresident of Indiana, solely because the notes or paper evidences of the debts were present in Indiana. The Court held that the notes did not constitute property located in the State of Indiana and accordingly was not taxable by that State, saying:

> In the facts in this case constituted the debts evidenced by the Ohio notes property in the jurisdiction of the State of Indiana at the time when such taxes were imposed, then the tax is valid * * *.
>
> The sole question then for this court is whether the mere presence of the notes in Indiana constituted the debts of which the notes were the written

evidence, property within the jurisdiction of that State, so that such debts could be therein taxed.

\* \* \* \* \* \* \*

We cannot assent to the doctrine that the mere presence of evidences of debt, such as these notes, under the circumstances already stated, amounts to the presence of property within the state for taxation.

In *Blodgett* v. *Silberman*, 277 U. S. 1, 9, 14, the Court approved the maxim "*mobilia sequuntur personam*" and applied the principle that the location of the paper evidences of intangibles was not material in determining the taxable situs of such property. It was held in that case that the State of the decedent's domicile might impose a succession tax on the transfer of his intangible property by will or inheritance, even though the evidences of such property were outside of the State at the time of his death. In that connection the Court said:

At common law the maxim "*mobilia sequuntur personam*" applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evidencing the same are found in the State of the domicile or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not.

\* \* \* \* \* \* \*

The question here is whether bonds, unlike other choses in action, may have a situs different from the owner's domicile such as will render their transfer taxable in the State of that *situs* and in only that State. We think that bonds are not thus distinguishable from other choses in action. It is not enough to show that the written or printed evidence of ownership may, by the law of the State in which they are physically present, be permitted to be taken in execution or dealt with as reaching that of which they are evidence, even without the presence of the owner. While bonds are so treated, they are nevertheless in their essence only evidences of debt. The Supreme Court of Errors expressly admits that they are choses in action. Whatever incidental qualities may be added by usage of business or by statutory provision, this characteristic remains and shows itself by the fact that their destruction physically will not destroy the debt which they represent. They are representative and not the thing itself.

It appears now to be settled beyond controversy in the Federal jurisdiction that intangibles, except where they have become part of a localized business in another jurisdiction, have an exclusive situs for the purpose of taxation at the domicile of the owner, without regard to where the paper evidences of such property may be found, and this is the present rule not only with respect to excise or transfer taxes, but also with respect to direct property taxes. *Buck* v. *Beach, supra.*

The doctrine presently approved by the Supreme Court, at least in so far as it involves the taxing power of the States under the Fourteenth Amendment, is clearly stated in *Farmers' Loan & Trust Co.* v. *Minnesota, supra,* decided January, 1930, as follows:

While debts have no actual territorial situs we have ruled that a State may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the creditor's domicile for taxation purposes. Tangibles with permanent situs therein, and their testamentary transfer, may be taxed only by the State where they are found. And, we think, the general reasons declared sufficient to inhibit taxation of them by two States apply under present circumstances with no less force to intangibles with taxable situs imposed by due application of the legal fiction.

\*     \*     \*     \*     \*     \*     \*

Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota.

The views of the Supreme Court are further stated and amplified in its latest decision on this question in *Baldwin* v. *Missouri,* 281 U. S. 586, decided May 26, 1930, wherein the Court cited with approval and quoted from *State Tax on Foreign Held Bonds, supra; Kirtland* v. *Hotchkiss, supra; Blodgett* v. *Silberman, supra;* and *Farmers' Loan & Trust Co.* v. *Minnesota, supra.* In the *Baldwin* case the State of Missouri had levied an inheritance tax measured by the value of certain intangible property in the form of deposits in Missouri banks, United States bonds, and promissory notes, most of which were executed by citizens of Missouri and secured by liens upon lands lying therein, but all of which intangibles were evidenced by documents located in Missouri, while the owner decedent was a resident of Illinois. The Court held that the property was not situated within the jurisdiction of Missouri, and that said State did not have the power to tax its transfer. In its opinion, the Court said:

The challenged judgment rests upon the broad theory that a State may lay succession or inheritance taxes measured by the value of any deposits in local banks passing from a non-resident decedent; also upon the value of bonds issued by the United States and promissory notes executed by individual citizens of the State, when devised by such non-resident, if these bonds or notes happen to be found within the confines of the State when death occurs. The cause was decided below prior to our determination of *Farmers' Loan and Trust Co.* v. *Minnesota,* 280 U. S. 204. *Blackstone* v. *Miller,* 188 U. S. 189, was cited in support of the conclusion reached. Considering *Farmers' Loan and Trust Co.* v. *Minnesota,* and previous opinions there referred to, the theory

upon which the court below proceeded is untenable and its judgment must be reversed.

Ordinarily, bank deposits are mere credits and for purposes of *ad valorem* taxation have situs at the domicile of the creditor only. The same general rule applies to negotiable bonds and notes, whether secured by liens on real estate or otherwise.

&ast;  &ast;  &ast;  &ast; . &ast;  &ast;  &ast;

We find nothing to exempt the effort to tax the transfer of the deposits in Missouri banks from the principle applied in *Farmers' Loan & Trust Co.* v. *Minnesota, supra*. So far as disclosed by the record, the situs of the credit was in Illinois where the depositor had her domicile. There the property interest in the credit passed under her will; and there the transfer was actually taxed. This passing was properly taxable at that place and not otherwise.

The bonds and notes, although physically within Missouri, under our former opinions were choses in action with situs at the domicile of the creditor. At that point they too passed from the dead to the living, and there this transfer was actually taxed. As they were not within Missouri for taxation purposes the transfer was not subject to her power. *Rhode Island Trust Co.* v. *Doughton*, 270 U. S. 69.

At least so far as concerns the power of the States to tax without conflict with the Fourteenth Amendment, the foregoing decisions of the Supreme Court appear definitely and unmistakably to establish two principles: First, the general principle that intangibles, such as we have here, follow the person and have a situs for the purposes of taxation only at the domicile of the owner; and, second, the specific principle that the mere presence of the instruments or paper evidences does not establish a taxable situs at the place where they are found in respect of the property rights which they represent. And, as we have shown, these principles are applied alike in the case of State excise or transfer taxes and in the case of direct property taxes.

Should a different rule be applied in the case of Federal taxation involving a nonresident alien decedent? Can intangible property consistently be said to have a certain situs for the purposes of State taxation and another and different situs for the purposes of Federal taxation? No such distinction is indicated by the decisions of the Supreme Court. The statute here involved did not undertake to create any situs for the property, other than at the place where " situated." If it were situated at the domicile of the owner it was not " situated in the United States." We can rely upon the court decisions setting forth what is meant by " situated " and where intangible property is situated. It is clear that the Fourteenth Amendment to the Constitution has no effect whatever in so far as the question now before us is concerned, but we are concerned with the rule laid down by the Supreme Court as to the situs of intangible property. Its situs is the foundation of the tax by the States under the Fourteenth Amendment decisions. In deciding those

cases the Court was called upon to decide where the property was situated. If the situs follows the domicile of the owner and is at that place, that principle affects the decision of the case before us.

*De Ganay* v. *Lederer, supra*, parallels in many respects the case now before us, the principal difference being that that case involved a Federal income tax and the present case involves a Federal estate tax. Each case arose under a Federal taxing statute, and in nowise involves the power of the several States to tax under the Fourteenth Amendment. Each case concerns intangible property, namely, corporate securities owned by a nonresident alien, the certificates or paper evidences of which were located in the United States; and the question in each case, in the last analysis, is whether such intangibles, for the purpose of Federal taxation, constitute property owned or situated in the United States.

In the *De Ganay* case the Court cited with approval and quoted *Blackstone* v. *Miller, supra*, and to the extent that it lends support to the doctrine that bonds and negotiable instruments are more than merely evidences of debt and give to the property rights themselves a tax situs where the instruments are found, this decision must be regarded as one of the " approving opinions " overruled in *Farmers' Loan & Trust Co.* v. *Minnesota, supra*. It should be noted, however, that the conclusion reached in the *De Ganay* case rests in large part aside from the principle above set out, on the proposition that the securities in question had acquired a business situs in Pennsylvania, and accordingly held the income was from sources within the United States, which situation is not presented in the instant case. In any event, the point in the *De Ganay* case which is of particular importance here is the fact that, in deciding the question of the situs of intangibles for the purposes of Federal taxation, the Court made no attempt to distinguish its prior decisions involving the power of the States to tax such property under the Fourteenth Amendment, but, on the contrary, adopted the same reasoning, the same doctrine, the same principles as were applied in the State cases under the Fourteenth Amendment.

In the case of *Turner* v. *McCuen*, decided by the United States District Court for the District of Vermont on August 30, 1930, the Collector had collected an estate tax on money deposited by a resident of Canada in a bank in Vermont. The Court discussed only the question as to whether the decedent was " engaged in business in the United States." Apparently the Court did not consider it worthwhile even to discuss the question whether otherwise the property might have been considered situated in the United States, but decided that the estate tax paid should be refunded. However, if bank deposits in the United States of a nonresident decedent be held to be property situated in the United States, the decision of the

Court was erroneous. While the Court did not refer to the *Baldwin* case and the *Minnesota* case, *supra*, the decision is in accord with the reasoning of those cases. The doctrine of those two cases was reaffirmed by the Supreme Court as late as November 24, 1930, in the case of *Beidler* v. *South Carolina Tax Commission*, 282 U. S. 1, in so far as indebtedness was concerned. In that case the Court had no occasion to decide the question as it related to corporate stocks. They were taxed in South Carolina, where the corporations were organized, and this question was not presented to the Court. It seems clear that the language of prior decisions is broad enough to include the stocks of foreign corporations here involved. Corporate stocks were included in the *De Ganay* case, *supra*, and were classified by the Supreme Court in the same way as notes and bonds. In the case of *Rhode Island Hospital Trust Co.* v. *Doughton* (1926), 270 U. S. 69, the Supreme Court said: " In the matter of intangibles, like choses in action, shares of stock, and bonds, the situs of which is with the owner, a transfer tax, of course, may properly be levied by the State of which he resides * * *." The Court held that North Carolina could not tax the transfer of the stock in a New Jersey corporation doing business in North Carolina, where two-thirds of the property was located. Shares of stock were involved in the *Silberman* case, *supra*, where the Court applied the same rule as in the case of bonds.

The respondent cites the case of *United States* v. *Bennett*, 232 U. S. 299, as authority for the proposition that the rules of taxation applicable to the States have no application to the Federal Government. That case, however, held that the Federal Government had the constitutional right to tax its citizens on account of the use of foreign-built yachts, even though the property during the taxable period had its situs beyond the territorial limits of the United States, the basis of the decision being the relation of the United States to its citizens and their relation to it. The case at bar is wholly different. It involves the inclusion for estate tax purposes of property of a nonresident alien. There is no analogy between the *Bennett* case and the case before us. But in any event we are not concerned with the power of Congress to impose a tax, but only with the construction of the statute, that is, whether the statute which imposes an estate tax upon the property of a nonresident decedent intended to include therein certain property. We construe the statute as not imposing such a tax by the language used. Only property *situated in the United States* was included. And the Supreme Court has settled the question that intangible property is situated at the domicile of the owner, which in this case was not in the United States.

Conceding for the sake of argument that the Congress had the power to subject the transfer of the property here involved to the estate tax, the question here is, Has it exercised that power by levying a tax measured by the value of intangible property situated in the United States belonging to a nonresident decedent? Under the Supreme Court decisions the property involved here was not "situated in the United States," but had its situs at the domicile of the owner.

In construing statutes levying taxes, it is the established rule not to extend their provisions by implication beyond the clear import of the language used, or enlarge their operations to embrace matters not specifically pointed out, and in case of doubt, they are construed most strongly against the Government. *Gould* v. *Gould*, 245 U. S. 151.

Certainly the statute applicable here does not in express language levy the tax upon nor measure the tax in the case of a nonresident decedent by the value of any property which is not "situated within the United States." Since the Supreme Court has now settled the law that the situs of stocks and bonds is at the domicile of the owner, then in the case of a nonresident decedent the statute does not lay a burden upon or measure it by the value of such property as is here involved.

The statute, in section 303 (d), expressly provides that stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States. However, no such provision is made as to bonds of domestic corporations or stocks in foreign corporations. The express inclusion of one class of securities implies that others are not to be so treated. The rule *expressio unius est exclusio alterius* seems aptly to apply here. This indicates that Congress had in mind in the statute before us different recognized rules as to the situs for taxation purposes of intangible property, but, except in the case of stock in a domestic corporation, it has provided only that such property "situated in the United States" shall be included in the gross estate. The intangible property in question here follows the domicile of the owner, and is therefore not property "situated in the United States."

If Congress had desired or intended to include, for purposes of the estate tax, intangible property of nonresidents of the kinds here in controversy, a provision evidencing such intention could very easily have been incorporated in the statute, as was done with respect to stock in domestic corporations. Certainly, to give such property a taxable situs in the United States, the statute must in any event expressly so provide. However, only in the specific case of stock in a domestic corporation has Congress undertaken by the statute to create any other situs for intangible property than that established

by the rule of law as set out in the judicial decisions, that is, the domicile of the owner.

In the various States statutes involved in the cases before the Supreme Court, the States expressly sought to tax intangible property at places other than the domicile of the owner, it being conceded that the State of the domicile had the right to tax. But the statute before us does not expressly make provision for taxation except as to property " situated in the United States." That the property involved here was situated at the domicile of the decedent in Cuba seems clear from the decisions.

The foregoing discussion with respect to other intangibles is applicable to the money on deposit with Lawrence Turnure & Co., regardless of whether it was engaged in the banking business. Whether it was so engaged or not, the money which it had credited to and placed on deposit for the decedent, like the other intangibles was not situated in the United States. *Baldwin* v. *Missouri, supra.*

Reviewed by the Board.

*Judgment will be entered under Rule 50.*