**HILL, Tax Assessor, v. CARTER.**

No. 6122.

Circuit Court of Appeals, Ninth Circuit.

March 9, 1931.

H. R. Hewitt, Atty. Gen., and H. T. Kay, First Deputy Atty. Gen., for appellant.

Prosser, Anderson & Marx, Mason F. Prosser, Robbins B. Anderson, Benjamin L. Marx, and Heaton L. Wrenn, all of Honolulu, Hawaii, for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This cause was tried in the Supreme Court of the Territory of Hawaii upon an agreed statement of facts in conformity with a procedure authorized by the laws of that territory. 31 Hawaii, 264. From a judgment to the effect that appellee was not liable to a tax on certain income, appeal is taken.

The question presented is the liability of appellee to pay a tax on her income for the year 1926, derived from stock dividends, interest on bank deposits and on federal, state, and municipal bonds, and from her undivided proportionate share of her deceased father's estate held in trust by the Security Trust Company of Rochester, N. Y. All the said stocks, bonds, and securities were derived through a bequest in her father's will. None of the certificates representing said stocks, bonds, and securities nor any portion of the bank deposits or the said trust estate ever have been in the territory of Hawaii. Since the year 1922 the said property and income of appellee have been controlled and handled by one Henry D. Quinby, a resident of the city of New York, her attorney in fact. Under his power of attorney, Quinby had plenary authority to manage and control the business affairs of appellee. All the income from the several sources mentioned was deposited by Quinby with the Bankers' Trust Company of New York in an account entitled "Helen Strong Carter Custodian Account." From this account there was drawn monthly by the said Quinby the sum of $5,000, which was deposited as an individual checking account in the Guaranty Trust Company of New York in the name of appellee. While appellee has a right to draw on the custodian account, she has never done so without notifying said Quinby. The custodian account is managed exclusively by Quinby. Quinby has at all times under his power of attorney exercised the fullest control over appellee's holdings in the state of New York, has col-

lected the income, borrowed large sums of money on the securities, and has repaid the same, has made investments, and, in short, has done everything in respect to the holdings that appellee could have done.

In addition to the foregoing, we quote from the agreed statement of facts the following paragraph: "That under and by virtue of said power of attorney the said Henry D. Quinby, without the previous knowledge of the taxpayer, and in the exercise of his full and unlimited discretion, has from time to time sold hundreds of thousands of dollars worth of stocks, bonds and other securities, and has reinvested hundreds of thousands of dollars in stocks, bonds and other securities selected by him, and has on behalf of the taxpayer attended the meetings of corporations, stocks and bonds of which were held by him as aforesaid and voted and acted as representing said stocks and bonds at said meetings; in short, that he has from time to time exercised all of the powers given him by said power of attorney in so far as occasion has arisen for their exercise."

The income statute of the Territory of Hawaii, in so far as it relates to individuals, is as follows: "There shall be levied, assessed, collected and paid annually upon the gains, profits and income received by every individual residing in the Territory, from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, and by every person residing without the Territory, from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, and by every servant or officer of the Territory or any political subdivision thereof, wherever residing, a tax in accordance with the following schedule on the amount so received during the taxation period as herein defined." Section 1388, Rev. Laws 1925.

The construction placed upon the provision of the statute in question appears from the following excerpt from the opinion of the court: "She earnestly contends, however, that it is evident from the language of the statute that it was the intention of the legislature to require individuals residing in the Territory to pay a tax on income derived solely from property located in the Territory and therefore the power to require the payment of a tax on income from property located elsewhere was not exercised. More specifically, her contention is that the words 'property owned * * * in the Territory,' as they appear in the statute, refer to the si-

tus of the property, and not to the domicile of the owner. We think there is no doubt that this is the true meaning of the statute."

 This case comes within the rule frequently announced by this and other courts, to the effect that "an appellate court must lean toward the interpretation adopted by the Supreme Court of the territory, and will not disturb its decision unless there is clear error." Ewa Plantation Co. v. Wilder (C. C. A.) 289 F. 664, 670. While a dissenting opinion was filed in the court below, we are not impressed that the reasoning of the majority opinion was in error. At least it does not clearly so appear.

 It is our conclusion also that the court did not err in holding that the maxim mobilia sequuntur personam is not applicable under the agreed statement of facts in this case. As said by this court in the Ewa Plantation Company Case, cited supra: "It is a general rule of law that the situs of personal property follows the domicile of its owner. Taylor v. Secor, 92 U. S. 575, 23 L. Ed. 663. But for purposes of taxation personal property may by statute be separated from the owner and taxed at the place where it is actually located."

While the contention is made that the case at bar is "on all fours" with the Ewa Plantation Company Case, it may be distinguished on the facts from those considered in the Ewa Case, wherein it was held that interest received from bonds and notes of corporations and deposits which it owned, and which were held in banks in the state of California, were not legally deductible from its tax return income for the year 1920. As was said in the latter case, distinguishing the facts in that case from the facts considered by the Supreme Court of the United States in De Ganay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 63 L. Ed. 1042: "The agent at San Francisco had authority only to purchase and hold the securities and to place the income on deposit, to be drawn upon, * * * by the plaintiff in error at its domicile as required for the payment of the current expenses of its plantation and dividends upon its stock."

Referring to the De Ganay v. Lederer Case, this court in the Ewa Plantation Company Case further said: "In that case the significant facts were that the stocks and bonds were in the hands of a local agent empowered to sell and dispose of them or any of them according to his own judgment, to reinvest the same for the owner's account, and to represent the owner and manage generally the owner's

business affairs. In the case at bar there was no such localization of the property."

The case of De Ganay v. Lederer is decisive of the case at bar unless, as contended by counsel for appellant, "it has been impliedly overruled by the recent decisions of the Supreme Court of the United States," citing, as so overruling, Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371; Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; Safe Deposit & Trust Co. v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 60, 74 L. Ed. 180, 67 A. L. R. 386; and Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056.

We are not impressed, from a consideration of the cases cited, that the De Ganay Case has been impliedly overruled. It is sufficient, we think, to say that the cases cited are distinguishable on the facts from the De Ganay Case. The only reference to the De Ganay Case in any of the cases cited is to be found in the case of Safe Deposit & Trust Co. v. Virginia, from the opinion in which case we quote the following excerpt:

"Manifestly, the securities are subject to taxation in Maryland where they are in the actual possession of the trust company— holder of the legal title. That they are property within Maryland is not questioned. De Ganay v. Lederer, 250 U. S. 376, 382, 39 S. Ct. 524, 63 L. Ed. 1042. * * * They have no legal situs for taxation in Virginia unless the legal fiction mobilia sequuntur personam is applicable and controlling. * * *

"Ordinarily this court recognizes that the fiction of mobilia sequuntur personam may be applied in order to determine the situs of intangible personal property for taxation. Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749. But the general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice whether through double taxation, or otherwise. * * *

"No opinion of this court seems definitely to rule the exact point now presented."

■ In considering whether a former decision of a court has been impliedly overruled in whole or in part by expressions to be found in a later decision, as well as the extent that any decision may be considered as controlling or an authority upon a particular question presented for determination in an instant case, it is well always to have in view the maxim never better expressed than in the language of Chief Justice Marshall in the celebrated case of Cohens v. Virginia, 6 Wheat. 399, 5 L. Ed. 257: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Judgment affirmed.