**COMMISSIONER OF INTERNAL REVENUE**
**v. BROOKS et al.**

No. 462.

Circuit Court of Appeals, Second Circuit.

July 29, 1932.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank T. Horner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Greene & Hurd, of New York City (Francis B. Hamlin and James L. Dohr, both of New York City, of counsel), for respondents.

Milbank, Tweed, Hope & Webb, Edward N. Perkins, and Selden Bacon, all of New York City, amicus curiæ.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The decedent, Ernest Augustus Brooks, died October 31, 1924. He was domiciled in Cuba and a British subject. At the time of his death, he was not engaged in business in the United States. He then owned bonds of foreign corporations, bonds of foreign governments, bonds of domestic corporations, bonds of a domestic municipality, and stock in a foreign corporation which were either in the possession of his son, Ernest Brooks, or of the brokerage firm of Lawrence, Turnure & Co., and were all in New York City. These securities were not used in any business or pledged or held in any way as security for any debt. They were left in the care of his son or the brokerage company. The son collected the income on the securities he held and deposited it in his father's account with the Fifth Avenue Bank of New York City. The brokerage firm collected income and deposited it in an account with that firm, against which the decedent drew checks that were always honored. At his death, the decedent had on deposit with Lawrence, Turnure & Co. $14,517.98 in this checking account.

The deficiency assessment was due to the fact that the Commissioner included the above-mentioned property in the gross estate of the decedent situated in the United States. The Board of Tax Appeals held that its inclusion was erroneous, and the petition for review brings this question before us.

It is claimed that the provisions of the Revenue Act of 1924, c. 234, 43 Stat. 253, required the action taken by the Commissioner. So far as pertinent, the statute (sections 302 (a), 303 (b-e) of the act, 26 USCA §§ 1094 note, 1095 note) is quoted:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. ⠇ * ᵎ

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined— * * *

"(b) In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States— * * *

"(d) For the purpose of Part I of this title, stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States. * * *

"(e) The amount receivable as insurance upon the life of a nonresident decedent, and any moneys deposited with any person carrying on the banking business, by or for a nonresident decedent who was not engaged in business in the United States at the time of his death, shall not, for the purpose of Part I of this title, be deemed property within the United States. * * * *"

The respondents meet the contentions of the Commissioner in two ways. First they say that the intangibles mentioned should not be held to be "property situated in the United States" at the time the decedent died." And, second, if Congress intended to subject these intangibles to the estate tax, it was powerless to do so because of the Fifth Amendment.

 To decide the first question, it is necessary to determine whether such securities as these came within the phrase "property situated within the United States" as of the time the statute was passed and took effect. We shall confine our consideration to intangible personal property. It had long been the law of the United States in respect to state taxation that such property had its taxable situs at the domicile of the owner regardless of the place where the paper evidences of the obligations were kept. State Tax on Foreign Held Bonds, 15 Wall. 300, 21 L. Ed. 179; Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558; New Orleans v. Stempel, 175 U. S. 309, 20 S. Ct. 110, 44 L. Ed. 174. This limitation on the state taxation of intangibles was, however, modified in Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, to permit New York to tax the transfer by will of debts due the decedent, who died domiciled in Illinois, from residents of New York. This decision recognized as lawful the power of the state of the domicile of the debtors to tax the transfer of the debts. It did not expressly hold that intangible property had a taxable situs also at the place where the securities themselves were located, but the close applicability of the reasoning of the opinion to give such a taxable situs cannot be gainsaid. Blackstone v. Miller was expressly overruled in Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000, but that was not until some years after the statute here involved was passed, and cannot help in determining what Congress meant in 1924 by "property situated in the United States." In De Ganay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 63 L. Ed. 1042, it was held that securities owned by a nonresident but physically present in Philadelphia in the possession of an agent who collected and remitted the income to the owner abroad were property. These securities were stocks, bonds, and mortgages secured upon property in the United States, or payable by persons or corporations domiciled in the United States, and it was further held, on the authority of Blackstone v. Miller, supra, among other decisions cited, that such property was within the United States and so within the meaning of Congress in taxing the income derived from property owned in the United States by persons residing elsewhere. While this case dealt with income, that alone does not serve to distinguish what was held as to the location of the income producing property. At least as to the bonds of domestic corporations, the state of the declared law in 1924 would afford good basis for the belief that Congress meant to include the intangibles here involved in the gross estate situated in the United States of

a nonresident decedent. Moreover, in Tappan v. National Bank, 19 Wall. 490, 22 L. Ed. 189, it has been held that shares of stock in a national bank could be made taxable at the place where they actually were regardless of the domicile of their owner. But these cases dealt with the power to tax; the intent to tax being plain. Here we are for the present not concerned with the power but with the intent to subject this property to the estate tax. Did the statute throw no further light on the intent of Congress, perhaps the foregoing would have been enough to put this property within the language used, especially since Treasury regulations under previous revenue laws had provided for the inclusion in the gross estate of a nonresident decedent of bonds physically present in the United States. See T. R. 37, art. 60, and T. R. 63, art. 53; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496. As to these regulations, however, see Shenton v. United States (D. C.) 53 F.(2d) 249.

But in section 303 (d) of this statute Congress expressly provided that "stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States. * * *" As the Board of Tax Appeals pointed out and the respondents insist, the express inclusion of such intangibles implies the exclusion of others under the maxim, expressio unius est exclusio alterius. Had Congress intended to include stock in a domestic corporation, and certainly there is much more reason to treat such intangibles as localized in this country than to treat stock in a foreign corporation or foreign bonds as property situated in the United States, there would have been no purpose in making the express provision to that effect. All question of power to tax aside, the most it would have done, so it would seem, would have been, if such stock was understood to be within the general coverage of the law, to have especially provided that it should be deemed property within the United States even though the certificates were kept elsewhere. The special treatment of the proceeds of life insurance in section 303 (e) as property not within the United States would by the same token tend toward a contrary view of what Congress intended to be included generally were it not for the fact that section 403 (b) (3) of the Revenue Act of 1918 (40 Stat. 1098) provided that: "The amount receivable as insurance upon the life of a nonresident decedent where the insurer is a domestic corporation, shall be deemed property within the United States." In section

403 (b) (3) of the Revenue Act of 1921 (42 Stat. 279) the above-quoted provision of the 1918 act was repealed, and the express repealing provision of the 1921 act was simply carried into the Revenue Act of 1924. So, too, might the special treatment of money on deposit with banks or bankers in section 303 (e) be thought to indicate the intent to treat all other debts as property situated in the United States when the debtors were domiciled there. When, however, effect is given to the commercial aspects of the relation between a foreign depositor and his banker in this country with its influence on the world trade of this nation, and it is recognized that this provision was but the reaffirmation of the general rule that debts have no taxable situs at the domicile of the debtor, we think it is more reasonable to believe that Congress was merely careful to assure such business that it would not be hampered.

In any event, the uncertainty which exists respecting the intended scope of the law as to intangible property of nonresident decedents which has no business situs in this country makes it doubtful that Congress meant to subject it to the estate tax. That being so, the doubt, under well-known principles, should be resolved in favor of the taxpayer. Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211.

As we are constrained to hold that the statute does not reach this property for purposes of taxation, it is unnecessary to express any opinion as to the power of Congress to tax it.

The decision of the Board of Tax Appeals is affirmed.

L. HAND, Circuit Judge (concurring).

I hardly think that the internal evidence of the statute would have alone been enough to turn the scale with me in the taxpayer's favor. I rely chiefly upon the fact that if the Treasury be right, the act is open to very grave constitutional doubts. It is now settled that a state may not tax the transfer of bonds at the domicile of the obligor, when the obligee lives in another state. Farmers' L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Beidler v. South Carolina Tax Commission, 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131. We should have to say that a different doctrine applies when Congress taxes the transfer of bonds of an American corporation held by an

Englishman. Certainly the cases are so far parallel as to put the validity of such an act in great question.