In the Matter of the Tax Appeals of SCOTT McCORMAC, VARI McKINLEY, aka VARI McCORMAC, and MAYTOR H. McKINLEY, JR., Appellants

NO. 7343

CASE NOS. 1788, 1789 and 1790

JANUARY 15, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* This is an appeal brought by Taxpayers-Appellants, Scott McCormac, Vari McKinley and Maytor H. McKinley, Jr., (hereinafter collectively referred to as "appellants"), from a decision and order of the Tax Appeal Court affirming the assessment by the

Director of Taxation of net income taxes on amounts disbursed to appellants as beneficiaries of a trust agreement. For the reasons set out below, we affirm.

I.

On or about February 26, 1962, Hawaiian Guardian, Ltd. (hereinafter referred to as "Guardian"),[1] was incorporated for the purpose of selling funerals to the public on a pre-need basis. Appellants, among others, were shareholders in Guardian. They were not, at times relevant to this appeal, residents of this State.[2]

On or about May 24, 1962, Guardian entered into a Clearing Trust Agreement, as trustor, with Bishop Trust Company, Ltd. (hereinafter referred to as "Bishop Trust"), a Hawaii corporation that is organized and doing business in the State, as trustee. The trust agreement, as amended on January 28, 1969, conferred upon Bishop Trust complete discretion in investment decisions, as well as exclusive possession, control and management of the trust corpus.[3] Guardian, in turn, retained a beneficial interest in the trust, *i.e.*, the right to receive in not less than quarterly payments all realized net income, gain and increment of the trust corpus.

Bishop Trust, pursuant to its duties under the trust agreement, subsequently invested the trust principal in United States treasury bills, bank certificates of deposit, preferred and common stock. No investments were made in any tangible property.

On or about January 28, 1969, Guardian was dissolved. Under the plan of dissolution, Guardian distributed to its shareholders, in

---

[1] Guardian was originally incorporated under the name Hawaiian Memorial Life Plan, Ltd.

[2] Appellants are California residents.

[3] Under the original terms of the trust agreement, it does not appear that Bishop Trust exercised complete control over the administration of the trust. For example, with regard to the investment of the trust principal and accumulations, the trustee was empowered to make only those investments as directed by Guardian, or in the absence of such direction, as the trustee selected if approved in writing by Guardian, or in accordance with certain trust investment rules established by Guardian.

However, under the amendment to the trust agreement, such restrictions to the trustee's discretionary powers were deleted. Hence, Bishop Trust was unfettered, absent any violation of its fiduciary duties, in its charge to "hold, administer and disburse" the trust corpus and any income, gain and increment realized therefrom.

exchange for the cancellation of their stock, a pro rata assignment of its beneficial interest in the clearing trust. Consequently, appellants, as former shareholders, succeeded to the interest of Guardian and became entitled to any trust income distributed.

Thereafter, appellants received quarterly payments of net income, consisting of interest and dividends from the trust property, as distributed by Bishop Trust. The Director of Taxation, by notices of assessments, assessed to appellants net income taxes on the amounts received. Appellants appealed these assessments to the Board of Review of the First Taxation District (hereinafter "Board"). In a decision rendered May 11, 1978, the Board found that the trust income received was taxable under State law, and that appellants, consequently owed the following amounts:

| APPELLANTS | AMOUNT OF NET INCOME TAX LIABILITY |
| --- | --- |
| Scott McCormac | $3,390.49 plus interest |
| Vari McKinley | $3,802.84 plus interest |
| Maytor H. McKinley, Jr. | $4,075.88 plus interest |

This decision by the Board was appealed to the Tax Appeal Court on June 9, 1978, as amended August 9, 1978. The Tax Appeal Court affirmed the Board's decision in a decision and order filed February 1, 1979. Subsequently, appellants brought this appeal on March 2, 1979.

II.

The issue before this Court is whether a non-resident beneficiary of a resident trust may be taxed on trust income derived from intangible trust property.

Section 235-4(e)(2) of HRS Chapter 235, provides for the assessment of net income tax on trust distributions. It reads:

A beneficiary of an estate or trust, or person treated as the owner of any portion of a trust, who is taxable upon income thereof under the Internal Revenue Code, shall be taxed thereon as herein provided, irrespective of the taxability of the estate or trust or whether it is required to make a fiduciary return under this chapter. If all such income consists of income which would be taxable under this chapter if received directly by the beneficiary

or person, he shall be taxed upon all of it. If some of it consists of income which would not be taxable if received directly by the beneficiary or person, then unless the trust instrument provides otherwise the income of each such beneficiary or person shall be conclusively presumed to have been received or derived out of each class of income of the estate or trust, and he shall be taxed upon such part of it as would be taxable if received directly by him.

The pertinent language, for the purposes of this appeal, indicates that a trust beneficiary may be taxed upon trust income, "[i]f . . . such income consists of income which would be taxable under this chapter if received directly by the beneficiary or person. . . ."

To determine whether the trust income here in question is taxable under HRS Chapter 235, we turn to HRS § 235-4(b), relating to the taxability of non-residents on income derived from "sources" within this State. HRS § 235-4(b) provides in relevant part:

In the case of a nonresident, the tax applies to the income received or derived from property owned, personal services performed, trade, or business carried on, and any and every other source in the State.

This section makes clear that the ability of the State to tax the income of non-residents turns upon the situs of the property generating such income.

It is not disputed that the trust income received by appellants was derived from intangible trust property administered by Bishop Trust in Hawaii. Appellants contend, however, that by virtue of the type of trust property involved, the situs of the property is not Hawaii but rather the domicile state of appellants. They cite, in support, the maxim *mobilia sequuntur personam*, "movables follow the person of the owner", *Ewa Plantation v. Wilder,* 26 Haw. 299, 309 (1922), *aff'd* 289 F. 664 (1923), whereby, for the purposes of taxation, the intangible property attains as its situs the domicile of its owner and therefore is subject to the laws of that state. Hence, they argue, the trust income cannot be deemed to have been derived from property owned or from a source within this State.[4]

---

[4] From a review of the trust agreement and the beneficial assignment of interest we are unable to determine the actual "ownership" of the trust corpus. It does appear certain, however, that the only interest retained by appellants was a beneficial interest in the trust income.

We agree that under certain circumstances, not present here, the maxim *mobilia sequuntur personam* may render the income derived from intangible property non-taxable in this State. *See Ewa Plantation v. Wilder, supra.* However, as this Court recognized in *Ewa Plantation,* "the principle of that maxim is not of universal application and may yield to the exigencies of particular situations." *Id.* at 314.

One instance where the maxim has been held not to apply is where the intangible property is so permanently located and completely controlled in another place that it there acquires a "business situs", a situs other than that of the domicile of the owner. *See Carter v. Hill,* 31 Haw. 264 (1930), *aff'd,* 47 F.2d 869 (1931), *cert. denied,* 284 U.S. 625 (1931). The business situs exception is reflected in Article 68, Rules and Regulations of the Director of Taxation 58-10 (hereinafter referred to as "Art. 68, Regs. 58-10").[5] It reads in part:

Article 68. *Source of Income, How Determined.*

(a) If income is derived from property the source of the income is the place where the property is "owned," which means the place where the property has its situs.

(b) In the case of intangible property, it will be deemed to have its situs at the place of the owner's domicile, unless the property has acquired a business situs at another place in which event the place of the business situs is the place where the property is owned. In determining whether there is a business situs and if so where, and generally in determining the source of income from intangible property, the Director of Taxation will apply the principles laid down in *Carter v. Hill,* 31 Haw. 264, as affirmed in *Hill v. Carter,* 47 F.2d 869, and *Ewa Plantation Co. v. Wilder,* 26 Haw. 299, as affirmed in 289 F.664.

\* \* \* \* \*

(d) The income of a beneficiary of a trust or estate has its source at the place where the property is "owned"; as stated in paragraph (a) this means the place where the property has its situs. If the income is from intangible property, this property

---

[5] The Rules and Regulations of the Director of Taxation (1971) are promulgated pursuant to HRS § 231-3(9) and § 235-118.

usually will have acquired a business situs at the place where the estate or trust is administered, and accordingly the income from the intangible property will have its source at that place; the principles laid down in *Carter v. Hill* and *Ewa Plantation Co. v. Wilder (see* paragraph (b)) will be applied.

From a reading of the foregoing regulation and the decisions in *Carter v. Hill, supra,* and *Ewa Plantation v. Wilder, supra,* we believe that the applicability of the business situs exception to the instant case, depends on the extent to which the trust property is localized within this State.

In *Carter,* the Territory of Hawaii sought to assess income taxes to a Hawaii resident on income derived from stocks, bonds and a trust interest held and managed by the taxpayer's attorney in New York. The Court held, that since the taxpayer's attorney exercised plenary authority over the New York holdings,[6] the property acquired a business situs in that state and, consequently, was not "property owned" in Hawaii, and hence non-taxable, within the meaning of the territorial taxing statute, Section 1388, R.L. 1925.

On the other hand, in *Ewa Plantation,* the Court held that the taxpayer, a Hawaii corporation, could be taxed on income derived from stocks purchased and held by an agent in California. The Court refused to find that the stock had acquired a business situs in California, because the agent of the taxpayer did not possess plenary authority over the property, but merely was authorized to purchase and hold the stock and to deposit any income received to the credit of the taxpayer.

Here, as we recognized, Bishop Trust exclusively held, controlled, and administered the corpus of the trust. It possessed virtually unlimited discretion in the investment of the trust principal and

---

[6] The Court in *Carter* summarized the powers exercised by the taxpayer's attorney in New York as follows:

Ever since Quinby's appointment as the taxpayer's attorney in fact he has, in pursuance of the powers specifically conferred upon him, exercised the fullest control over her holdings in New York; he has collected the income from these holdings; has borrowed large sums of money, using them as security; has repaid money so borrowed; has made investments, and in short has done everything in connection with these holdings that the taxpayer herself could have done.
Carter v. Hill, *supra* at 268.

accumulations and, further, was responsible for the collection and disbursement of any income generated under the trust. Under these facts, we believe the intangible property generating the income sought to be taxed acquired a business situs in Hawaii and therefore was property owned in this State, within the meaning of Art. 68, Regs. 58-10 and HRS § 235-4(b). .

Consequently, having determined the source of the trust income to be in Hawaii, the Director of Taxation may properly assess net income taxes to appellants on the income received pursuant to HRS § 235-4(b) and § 235-4(e)(2). Accordingly, the judgment of the Tax Appeal Court is affirmed.

*Naomi Sakamoto (Shannon & Sakamoto* of counsel) for appellants.

*Allan S. Chock,* Deputy Attorney General, for appellee, Director of Taxation.