*324 OPINION.
Maeqdette:
The first question is whether William Northrup McMillan Avas a resident and a citizen of the United States at the time of his death in 1925. In our ojfinion he Avas not. Title 8, section 17, United States Code of laws, provides that “Any American citizen shall be deemed to have expatriated himself when * * * he has taken an oath of allegiance to any foreign State.” It is undisputed that the decedent took an oath of allegiance to the British Crown in 1920, perhaps even earlier than that, and he never thereafter repatriated himself as a citizen of this country. A statement in his will, made prior to his oath of allegiance to Great Britain, that he was “of St. Louis, Missouri,” and like statements concerning him made by others after his death, do not constitute repatriation. It is clear from the facts before us that he was not a citizen of the United States at the time of his death.
We think it equally clear from the facts that he was not a resident of this country at the time of his death, nor for many years prior thereto. A resident is one who resides in a place and to reside *325 is to live; to make an abode for a considerable time; to dwell as in a home. (Standard Dictionary.) Under no aspect of that definition can it be said that decedent ever resided in the United States after 1899. He made his home elsewhere, acquired extensive property and business interests outside this country, and looked after those interests in person. During the last ten years of his life he was in this country but once, for a brief visit. Respondent cites, as authorities to the contrary, Adolph Rosenberg, Executor, 2 B. T. A. 720; Union Trust Co. of Cleveland, Executor, 5 B. T. A. 1272; Noah C. Rogers, Executor, 17 B. T. A. 571; Bank of New York & Trust Co., Executor, 21 B. T. A. 197; Guaranty Trust Co., Executor, 25 B. T. A. 507. But in each of those cases there was no expatriation, as here, and there were definite evidences of intention to retain domicile in the United States. In the instant proceeding the evidence not only fails to support the theory that decedent retained or intended to retain his domicile in this country, but it shows that he had no such idea or intention.
The second question relates to the inclusion in decedent’s estate of various items of property received from his father’s estate, of certain intangibles kept in this country, and of money deposited in banks in the United States. The property received from the estate of decedent’s father consisted of United States bonds and Treasury notes, county road improvement bonds, corporate stocks and securities, a debt owing from decedent to his fathers’ estate, cash in bank, accrued interest on bonds, and real estate valued at $82,527.15.
The pertinent provisions of the Revenue Act of 1924, here applicable, are:
Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate * * *.
Sec. 303. For the purpose of the tax the value of the net estate shall be determined—
*******
(d) For the purpose of Part I of this title, stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States, * * *
(e) * * * and any moneys deposited with any person carrying on the banking business, by or for a nonresident decedent who was not engaged in business in the United States at the time of his death, shall not, for the purpose of Part I of this title, be deemed property within the United States.
*326 In Ernest Brooks, et al., Executors, 22 B. T. A. 71, we considered the statute above cited respecting its application to intangible property of a nonresident alien. The property consisted of stock in a foreign corporation, bank deposits, bonds of foreign corporations, foreign governments, domestic corporations, and a domestic municipality. All that property was kept in New York, where the income was collected and deposited to the credit of the alien decedent. We there held that the situs of such securities was at the domicile of the owner, and hence they should not be included in his taxable estate in this country. That decision was affirmed by the Circuit Court of Appeals for the Second Circuit on July 29, 1932, 60 Fed. (2d) 890. In both decisions a distinction, due to statutory provision, was drawn between the securities mentioned and stock in a domestic corporation.
In the above case court decisions are reviewed, and it is apparently settled in the Federal jurisdiction that stocks, bonds and similar securities, mortgages and other evidences of indebtedness, money on deposit, and other intangibles, if not part of a localized business elsewhere have an exclusive situs for tax purposes at the domicile of the owner. Cf. Baldwin v. Missouri, 281 U. S. 586. That principle is modified by section 303 (d) of the Revenue Act of 1924, which provides that, for Federal estate tax purposes, “ stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the Unted States.”
None of the personal property in this country which was owned and held by petitioner’s decedent at his death was employed by him in business here. In our opinion none of that property was subject to Federal estate tax except the 40 shares of stock in the Annuity Realty Company, a domestic corporation, received in the distribution of the William McMillan estate, and the stock in domestic corporations included in the return filed with respect to decedent’s estate.
Under the laws of Missouri, in-1925 real property was not subject to the expenses of administration of a decedent’s estate. Hence it could form no part of such estate for Federal estate tax purposes, under section 302 (a) of the Revenue Act of 1924. Crooks v. Harrelson, 282 U. S. 55; Oreon E. Scott et al., Executors, 25 B. T. A. 131. Therefore, whatever interest in real property in Missouri was held by petitioner’s decedent at his death can not be subjected to estate tax by the respondent.
Respecting personal property of the decedent in Great Britain and Africa, respondent concedes that such property is not taxable here if we decide, as we have, that decedent was not a resident or citizen of the United States. The value of that property, $265,798.17, therefore should not be included in the gross estate upon a recomputation of the tax.
*327 The decedent and his mother made an agreement respecting a portion of the income from the William McMillian trust estate. During the mother’s last illness the agreement was canceled, but in order to carry out certain provisions of her will the decedent voluntarily paid to her executors amounts aggregating $399,635.53. The payments began in 1915 and continued until some time in 1921. The respondent contends that the amount so paid constituted a valid claim by decedent’s estate against the estate of his mother, and hence should be included in his gross estate. The evidence indicates that decedent made the payments with full knowledge of all pertinent facts. If he was under any misapprehension at all, and it is by no means certain that he was, it was only concerning the legal effect of the agreement with his mother. We think the respondent’s contention is not well founded. It is a general principle of law that payments voluntarily made with full knowledge of all the facts, although under mistake or ignorance of the law, are not recoverable in the absence of fraud or improper conduct of the payee. Little v. Bowen, 134 U. S. 547. Here, no fraud, or improper conduct by his mother’s executors, induced the payments in question.
Respondent has admitted error in disallowing deductions on account of funeral and administration expenses and the like under the Revenue Act of 1924, and of a payment of $50,000 in compromise of a claim against decedent’s estate. In the case of a nonresident decedent such deductions are allowable in the proportion which the value of his gross estate located in this country bears to his entire estate, but in no case to exceed 10 per cent of the value of his gross estate situated in the United States. Section 303 of the statute deals only with such property of a decedent as may become subject to Federal estate tax. It is not concerned with any property not subject to such tax. Obviously, the language used and the deductions allowed can only refer and apply to such taxable property. Oreon E. Scott et al., Executors, supra. The only property of the decedent subject to Federal estate tax was his stock in domestic corporations, having an aggregate value of $37,856.50. Not more than 10 per cent of that amount should be allowed as a deduction in recomputing the tax.
Reviewed by the Board.

Decision will be entered, under Rule BO.