*Decision will be entered under Rule 50.*

HERMAN A. HOLSTEN, AS ANCILLARY EXECUTOR FOR THE ESTATE OF LUISA TERRY PONVERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81568. Promulgated March 9, 1937.

*J. Robert Sherrod, Esq.,* for the petitioner.
*Ralph F. Staubly, Esq.,* for the respondent.

OPINION.

MILLER: This is a proceeding involving a deficiency in estate tax in the amount of $104,539.90. The issue is whether or not respondent erred in including in the gross estate of decedent, a nonresident alien, as property situated in the United States, the value of certain bonds issued by private and public corporations of the United States, which bonds were physically located in Cuba at the time of decedent's death.

The decedent, Luisa Terry Ponvert, at the time of her death on January 8, 1934, was a citizen and resident of Cuba, and was not engaged in business in the United States.

At the time of her death decedent was the owner of certain bonds having a value, including accrued interest, of $872,544.30, at which value they were included by respondent in decedent's gross estate in determining the deficiency involved herein. Said bonds were all physically located in Cuba at the time of decedent's death. They

had been, theretofore, issued by domestic corporations of the United States, the United States Government, the United States Federal Land Banks, and states and municipalities of the United States. The bonds were all coupon and not registered bonds.

The Federal Land Bank bonds included among the bonds herein-above referred to had a face value of $170,000 and a fair market value, plus accrued interest, at the time of decedent's death, of $160,609, at which last stated value they were included by respondent in decedent's gross estate.

The applicable statute is the Revenue Act of 1926, which, so far as material here, is set forth in the margin.[1]

The question presented is whether the property in controversy constituted a part of the gross estate of the alien decedent, Ponvert, situated in the United States, within the meaning of the statute, at the time of decedent's death. In our opinion, such was not the intent of Congress.

The Supreme Court has decided that similar bonds, physically situated in the United States, were properly included in the estate of a nonresident decedent, for purposes of tax determination. *Burnet* v. *Brooks*, 288 U. S. 378. In the instant case, the Commissioner proposes that we go one step farther and hold that such bonds, physically situated in Cuba, were actually situated in the United States. So to hold would distort the meaning of the word and the intent of the statute.

A careful reading of the statute shows that Congress intended to use a different basis for tax determination in the case of a nonresident alien decedent. It selected as a method of establishing that basis, the test of situs of property in the United States; except that stock in a domestic corporation, owned and held by a nonresident, was required to be included, regardless of situs.[2] It would have been easy, if Congress had wished, to require the inclusion as well, of bonds issued by domestic corporations. This it did not do, and the special provision regarding stocks, is, in itself, evidence of intent to treat bonds as in a separate class, and to require their inclusion only when they are actually, physically situated in the United States.

In determining legislative intent we must assume that the principles impliedly invoked by the statute were principles of law thereto-

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *.
SEC. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
* * * * * * *
(b) In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States * * *.
[2] [Revenue Act of 1926.] SEC. 303. (d) For the purpose of this title stock in a domestic corporation owned and held by a nonresident shall be deemed property within the United States * * *.

fore declared and then held. It would be quite inadmissible to assume that the Congress was legislating in disregard of existing doctrine. *Burnet* v. *Brooks, supra*. The distinction made, by the provisions of the statute, between bonds and stocks in domestic corporations follows, logically, principles of law theretofore established. Those principles are clearly set out by Beale in his treatise on Conflict of Laws (vol. 1, p. 573), as follows:

A bond is a "common law specialty" and has a situs at the place where it is situated; it is in all respects like a chattel. A bond therefore should be held to be taxable at its situs and not taxable elsewhere except at the domicil of the owner, in those states where the right to tax is settled by authority, though contrary to legal principle.

The true nature of a share of stock in a corporation is that it confers upon the owner of the share membership in the corporation. The stock is a creature of the law that created the corporation, and its ownership depends solely upon the provisions of that law. The right of the owner of the stock is therefore created and guarded by the law of one state, and always within the power of that law; and must be regarded as within its juridiction. This says the Supreme Court of the United States, is "the law of the property." It has accordingly been held that a state which charters a corporation may tax the shares of its capital stock, even though owned by a non-resident.

Another guiding principle, applicable in the taxation of nonresident aliens, is set forth in a statement of *White, C. J.*, speaking for the Court in *United States* v. *Goelet*, 232 U. S. 293:

It may not be doubted, as observed by the trial court in these cases (omitting the consideration of taxes imposed on property having a situs within the jurisdiction of the taxing authority), speaking in a general sense, that the taxing power, when exerted, is not usually applied to those even albeit they are citizens, who have a permanent domicil or residence outside of the country levying the tax. Indeed, we think it must be conceded that the levy of such a tax is so beyond the normal and usual exercise of the taxing power as to cause it to be, when exerted, of rare occurrence and in the fullest sense exceptional.

and in *United States* v. *Bennett*, 232 U. S. 299, the same principle was restated, to the effect that a statute "would not be construed without clear intendment manifested to that effect as including a tax on a citizen permanently domiciled outside of the geographical limits of the United States." The Court went on to say that as taxing statutes are usually confined to persons within the territorial jurisdiction of a taxing authority, and that to do otherwise would be exceptional, the statute involved should not be construed as having been adopted to accomplish such unusual and strange results, unless such a view was compelled by its terms.

The taxing statutes of the United States have been extended to include the transfer of property by citizens, and aliens as well, permanently domiciled outside of the United States. Nevertheless, the

principle still stands, that such statutes should be construed according to their "clear intendment." Unless the interpretation contended for by the Commissioner, of the applicable statutes involved in the instant case, is compelled by their terms, such interpretation should not be adopted.

Reliance can not be placed upon *Burnet* v. *Brooks* to secure the result desired by the Commissioner; in fact, the reasoning in that case leads to the exactly opposite conclusion. The Court, in that case, began its consideration of the question of legislative intention in the enactment of the pertinent sections as follows:

> As to tangibles and intangibles alike, it made the test one of *situs*, and we think it is clear that the reference is to property which according to accepted principles, could be deemed to have a *situs* in this country for the purpose of the exertion of the federal power of taxation. [Italics supplied.]

What were the accepted principles to which the Court referred, and which were in the mind of Congress? Answering this question, the Court went on to say:

> The argument is pressed that the reference to situs must, as to intangibles, be taken to incorporate the principle of mobilia sequuntur personam and thus, for example, that the bonds here in question though *physically in New York* should be regarded as situated in Cuba where decedent resided. But the Congress did not enact a maxim. When the statute was passed it was well established that the taxing power could reach such securities in the view that they had a situs where they were *physically located.* As securities thus *actually present* in this country were regarded as having a situs here for the purpose of taxation, we are unable to say that the Congress in its broad description, embracing all property "situated in the United States," intended to exclude such securities from the gross estate to be returned and valued.[3] [Italics supplied.]

The conclusion is inescapable that the Court in *Burnet* v. *Brooks*, *supra*, relied upon the *physical presence* of the *bonds* in the United States, to bring them within the established principles referred to. In the instant case the bonds were physically present in Cuba. The doctrine of *mobilia sequuntur personam* is not involved. *De Ganay* v. *Lederer*, 250 U. S. 376. It is a question of physical situs. That is the test established by Congress. Applied in the case of *Burnet* v. *Brooks*, that test brought the bonds in question within the language of the statute. Applied in the instant case, that test excludes such bonds from the gross estate contemplated by Congress as a basis for tax determination.

The conclusion set out above is further confirmed by another statement of the Court in *Burnet* v. *Brooks*, *supra*, where, in considering the possibility of violation of established principles of international

---

[3] See also *People, etc.* v. *Graves*, —— U. S. —— (January 4, 1937), where the Supreme Court said: "Where we speak of a 'business situs' of intangible property in the taxing State we are indulging in a metaphor."

law in the imposition and collection of taxes, the Court said that the bonds, physically situated in the United States as they were, were "within the reach of the power which the United States by virtue of its sovereignty could exercise as against other nations * * *. This view of the scope of the sovereign power [it said] in the matter of the taxation of securities *physically within the territorial* limits of the sovereign is sustained by high authority and is a postulate of legislative action in other countries" (italics supplied), citing *Winans* v. *Attorney General* (1910), A. C. 27.

The Supreme Court, in *Burnet* v. *Brooks, supra,* went on to examine carefully the language of the various revenue acts from 1916 to 1924, inclusive, together with the rulings of the Commissioner of Internal Revenue and the Treasury regulations which had been promulgated over a period of years, for the purpose of interpreting the words "situated in the United States" as they had appeared in each of the acts referred to. As the opinion clearly shows, these rulings and regulations, uniformly, spoke in terms of bonds, *actually physically situated* in the United States. They also spoke, uniformly, of stock in domestic corporations, regardless of physical situs. By way of summary the Court said:

> We find no ground for questioning the intention of the Congress, when in the Revenue Act of 1924 it reenacted the provision as to the property of nonresidents "situated in the United States", to impose the tax with respect to *bonds physically* within the United States and stock in domestic corporations. *Brewster* v. *Gage,* 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457. [Italics supplied.]

The language of section 303 (b) in the Revenue Act of 1924 is identical with the language of section 303 (b) in the Act of 1926. As the Treasury Department regulations issued in connection with the 1924 Act (Regulations 68, art. 50, T. D. 3683) again spoke in terms of bonds physically present in the United States, the statement of the Court, above quoted, becomes even more conclusive of the intent of Congress in reenacting the same provision of the 1926 Act. The reference to *Brewster* v. *Gage,* 280 U. S. 327, cited by the Supreme Court, reads as follows:

> It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. [See also *Guaranty Trust Co. of New York* v. *Commissioner,* 79 F. (2d) 245, (Second Circuit), 16 A. F. T. R. 245 and cases there cited.]

There can be no doubt that the Supreme Court in *Burnet* v. *Brooks, supra,* had clearly in mind the different theory used for the inclusion of domestic stocks; for while it spoke in every instance of the actual,

physical presence of the bonds in the United States as the basis of inclusion for tax purposes, it spoke equally clearly of the fact that physical situs was not necessary in the case of domestic stocks:

We think that the Government's construction of the provision is the more reasonable one, that the place where the stock was held was not an element in the application of section 303 (d) and that this provision was designed to insure the inclusion of the stock of a domestic corporation in all cases whether the certificates were physically present in the United States or not.

The Treasury Department regulations adopted under the Revenue Act of 1924, contained further evidence of adoption of the interpretation which we have placed upon the words "situated in the United States." As the Court said in *Burnet* v. *Brooks, supra*, these regulations:

* * * expanded the provision as to the "situs of property of nonresident decedents" so as to include stock in foreign corporations when the certificates *were held here*, by providing: "Real estate within the United States, stocks and bonds *physically in the United States* at date of death, moneys due on open accounts by domestic debtors, and stock of a corporation or association created or organized in the United States, constitute property having a situs in the United States". Reg. 68, Art. 50, T. D. 3683. [Italics supplied.]

Thus, we see that when a new type of property (stock in foreign corporations) was brought to the attention of the Treasury Department for classification under the act, it adopted a regulation making such foreign stocks, together with bonds, subject to inclusion for purposes of taxation, only if physically situated in the United States.

Congress was informed of this regulation and of the several preceding ones, when it reenacted sections 302 and 303 of the Revenue Act of 1924, in the Act of 1926. We assume that by such reenactment, it expressed its intention to continue in effect the interpretation set out in these successive regulations; thus excluding from the gross estate of a nonresident alien decedent, for purposes of tax determination, such bonds as are here involved.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

Hill, dissenting: The majority opinion proceeds upon the theory that the tax in controversy is measured by the value of the decedent's property, which at the time of his death, was "situated in the United States"; that the question of what constitutes property situated in the United States within the meaning of the statute is one of legislative intention, which must be determined in the light of those accepted principles pursuant to which property may be deemed to have a situs in this country for the purpose of Federal taxation; and

that, upon authority of *Burnet* v. *Brooks*, 288 U. S. 378, it was well established when the statute was enacted that the taxing power could reach stocks and bonds physically present in the United States, in the view that they had a situs where they were physically located.

With so much I agree, but error lies, I think, in predicating the majority opinion upon the assumption that intangibles, such as stocks and bonds, have a taxable situs *only* at the place where the certificates are physically located, or that such was the accepted doctrine at the time the applicable revenue act was passed.

While it was held in the *Brooks* case, *supra*, that stocks and bonds of a nonresident alien decedent physically present in New York were includable in the decedent's gross estate, the Supreme Court in its opinion said nothing to indicate that the place where the certificates were physically located constituted the *sole* taxable situs, nor that the domestic bonds, which comprised part of the Brooks estate, were not also subject to the tax because the domicile of the debtors was. in the United States. All of the securities involved in that case were in this country, and hence it was sufficient for the Court to predicate its holdings solely upon that ground.

It is to be noted, however, that, in addition to the securities mentioned, Brooks at the time of his death had a credit balance of $14,517.98 representing cash on deposit with Lawrence Turnure & Co. in New York City. Section 303 (e) of the Revenue Act of 1926 provides that moneys, deposited with any person "carrying on the banking business" by or for a nonresident decedent who was not engaged in business in the United States at the time of his death, shall not be deemed property within the United States. The Board found that the decedent was not engaged in business in the United States at the time of his death, but did not find as a fact whether or not Turnure & Co. was carrying on the banking business, since that point was immaterial in the view of the case taken by the Board. The Supreme Court in its opinion said:

> The securities should be included in the gross estate of the decedent; the inclusion of the balance of the cash deposit will depend, under the statute, upon the finding to be made with respect to the nature of the business of the concern with which the deposit was made.

The Court further pointed out that in the exercise of its power Congress, save as stated, "did not except debts due to a nonresident from resident debtors."

Thus, the view of the Court was clearly indicated that unless the deposit came within the specific exemption of the statute, that is, unless Turnure & Co. was engaged in the banking business, the

amount of the deposit would be includable in the gross estate. Yet, the deposit was merely a domestic credit owned at the time of his death by a nonresident alien decedent, and obviously could not be included in his gross estate under the theory applied to the securities physically located in this country. Such credit, it would seem, could be said to come within the purview of the taxing statute only because of the then accepted principle that domestic credits had a situs for taxation at the domicile of the debtors.

Prior to *Farmers Loan & Trust Co.* v. *Minnesota* (January 6, 1930), 280 U. S. 204, it had long been the accepted doctrine of the courts of this country that intangibles, such as bonds and other securities, might have a taxable situs in four jurisdictions, namely, (1) at the domicile of the creditor or owner, *Kirtland* v. *Hotchkiss* (October 1879), 100 U. S. 491; *Bullen* v. *Wisconsin* (April 10, 1916), 240 U. S. 625; (2) at the debtor's domicile, *Blackstone* v. *Miller* (January 26, 1903), 188 U. S. 189; *Liverpool, etc., Insurance Co.* v. *Orleans Assessors* (May 15, 1911), 221 U. S. 346 (and authorities there cited); (3) at the place where the instruments are found—physically present, *De Ganay* v. *Lederer* (June 9, 1919), 250 U. S. 376 (and authorities cited); and (4) within the jurisdiction where the owner has caused them to become integral parts of a localized business, *Board of Assessors* v. *Comptoir National* (November 30, 1903), 191 U. S. 388; *Metropolitan Life Insurance Co.* v. *New Orleans* (April 8, 1907), 205 U. S. 395.

At the time of the enactment of the Revenue Act of 1926, which is the statute governing this proceeding, it was an accepted principle, long theretofore established by decisions of the Supreme Court of the United States, that debts had a situs for taxation at the domicile of the debtors. This doctrine was equally as well established as the principle that securities are also subject to tax in the jurisdiction where the instruments are found—physically present—the basis upon which was rested the decision in the *Brooks* case.

*Blackstone* v. *Miller, supra,* decided January 26, 1903, involved the question of the power of the State of New York to impose a succession or transfer tax upon debts, including a deposit in a trust company, owing by residents of New York to a citizen of Illinois, who died domiciled in that state. The New York statute levied the tax only "on property within the State" where the decedent was a nonresident of the state at the time of his death. Thus, the question was whether the debts involved constituted property within the State of New York, the domicile of the debtors. The Supreme Court upheld the right of New York to impose the tax, holding that the

debts had a taxable situs in the state of the debtors' domicile, notwithstanding they were also taxable in Illinois, saying:

If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the State of New York, then New York may subject the transfer to a tax. *United States* v. *Perkins*, 163 U. S. 625, 628, 629; *McCulloch* v. *Maryland*, 4 Wheat. 316, 429. But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. * * * What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. * * *

Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the State at the time of the death.

And in *Liverpool, etc., Insurance Co.* v. *Orleans Assessors, supra,* decided May 15, 1911, the Court said:

The legal fiction, expressed in the maxim *mobilia sequuntur personam* yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicile. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor and is of value to the creditor because he may be compelled to pay; and power over the debtor at his domicile is control of the ordinary means of enforcement. *Blackstone* v. *Miller*, 188 U. S. 205, 206. Tested by the criteria afforded by the authorities we have cited, Louisiana must be deemed to have had jurisdiction to impose the tax. The credits would have had no existence save for the permission of Louisiana; they issued from the business transacted under her sanction within her borders; the sums were payable by persons domiciled within the State, and there the rights of the creditors were to be enforced. If locality, in the sense of subjection to sovereign power, could be attributed to these credits, they could be localized there. If, as property, they could be deemed to be taxable at all, they could be taxed there.

Bonds, like simple contract debts, are merely choses in action, and their situs for purposes of taxation is to be determined under the principles applicable to similar intangibles. This is made plain by the opinion of the Court in *Blodgett* v. *Silberman*, 277 U. S. 1, from which the following is quoted:

The question here is whether bonds, unlike other choses in action, may have a situs different from the owner's domicile, such as will render their transfer taxable in the State of that situs, and only in that State. We think bonds are not thus distinguishable from other choses in action. * * * While bonds are so treated, they are nevertheless in their essence only evidences of debt.

That Congress had the power or jurisdiction to impose the tax in dispute is conceded by the prevailing opinion, and I think it is so clearly settled by the *Brooks* decision as not to require discussion

here. Rather, the question is whether the bonds, by the value of which the present tax is measured, constituted property "situated in the United States", as that term was used by Congress in the statute.

In *Burnet* v. *Brooks, supra*, the Court in its opinion said:

Again, so far as the intention of the Congress is concerned, we think that the principles thus impliedly invoked by the statute were the principles theretofore declared and then held. It is quite inadmissible to assume that the Congress exerting federal power was legislating in disregard of existing doctrine, or to view its intention in the light of decisions as to state power which were not rendered until several years later.

(*Blackstone* v. *Miller, supra*, was not overruled until 1930, nearly four years after the enactment of the Revenue Act of 1926.)

As shown above, the doctrine theretofore declared and then held at the time the 1926 Revenue Act was passed recognized that domestic credits, such as the bonds we are concerned with in this case, had a taxable situs at the domicile of the debtors, as well as at the place where the certificates or paper evidences were physically located, or at the domicile of the creditors or owners, or where they had become parts of a localized business. It follows that for precisely the same reason which the Court found sufficient in the *Brooks* case, the bonds here in question should be included in decedent's gross estate.

It is unimportant that the doctrine referred to, as applied to the power of a state to tax under the Fourteenth Amendment, was later overruled in *Farmers Loan & Trust Co.* v. *Minnesota, supra*. It was an accepted principle at the time of the enactment of the taxing statute, and is controlling in the determination of the Congressional intendment.

Furthermore, the Supreme Court, in the later case of *First National Bank of Boston* v. *State of Maine*, 284 U. S. 312, took care to point out that it was there dealing with the power of the states under the due process clause of the Fourteenth Amendment, and, after discussing the desirability that the taxation of intangibles, as well as tangibles, be limited to one state, the Court solved the problem as to which of the states should be permitted to impose the tax by applying the maxim *mobilia sequuntur personam*. That the rule there laid down as applicable to the states does not apply to the Federal Government was positively and definitely stated in the *Brooks* case, wherein the Court, in dealing with a case under the Federal estate tax statute, rejected the doctrine of *mobilia sequuntur personam* which it had applied in the decision just mentioned.

For the reasons indicated, it is my opinion that the decision in the case at bar should be for the respondent.

Turner agrees with this dissent.