ESTATE OF JOSE M. TARAFA Y ARMAS, DECEASED, FERNANDO J. CANCIO Y ERRO, EXECUTOR AND ANCILLARY EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82656. Promulgated January 7, 1938.

*R. A. Littleton, Esq.*, for the petitioner.
*C. A. Gwinn, Esq.*, for the respondent.

### OPINION.

BLACK: Section 301 of the Revenue Act of 1926 imposes a tax upon the value of the "net estate", as determined under the provisions of section 303 of that act, of every decedent "whether a resident or non-resident of the United States." Section 302 provides for inclusion in the "gross estate" of the value at the time of the decedent's death of all property "wherever situated" to the extent of the decedent's interest therein at the time of his death. Section 303 prescribes how the net estate of a decedent shall be determined, and by section 303 (b) the computation of the net estate of a nonresident starts with only that part of his gross estate which is situated in the United States. While "stock in a domestic corporation owned and held by a nonresident decedent" is "deemed property within the United States" (sec. 303 (d)), "moneys deposited with any person carrying on the banking business, by or for a nonresident decedent who was not engaged in business in the United States at the time of his death" are not so deemed. (Sec. 303 (e).)

The first numbered issue herein—whether or not the respondent correctly included the value of the decedent's one-half community interest in a first mortgage bond of a private domestic corporation, which bond was physically located in the Republic of Cuba at the time of the decedent's death—has been considered and decided adversely to the respondent in *Herman A. Holsten, Executor*, 35 B. T. A.

568, on review (C. C. A., 2d Cir.). We there held that bonds, even though of domestic corporations and municipalities, to be included in the gross estate of a nonresident alien must be physically located in the United States at the time of his death. On the basis of this decision we sustain petitioner on the first point.

The basis for the respondent's inclusion of deposits in United States banks in the decedent's gross estate is that the decedent was engaged in business in the United States and therefore such deposits are not within the ambit of subdivision (e) of section 303, *supra*. In this connection the proof shows that, while the decedent made many trips to the United States, usually stopping over for two or three weeks while on his way to Europe, he was not engaged in business here "at the time of his death."

Decedent's son, Jose Miguel Tarafa, testified at the hearing that every year, after the busy season in grinding sugar cane was over, his father visited the United States and Europe; that on most of the trips he accompanied his father; that these trips were not business trips, but were made for pleasure and recreation; and that his father carried on no business in the United States and was not in business in the United States at the time of his death. He testified that the bank deposits which his father made with New York banking institutions were made because of unsettled conditions in Cuba and because of the greater safety which United States banking institutions afforded; that his father's death came while he was in the United States upon one of his habitual sojourns on pleasure.

Respondent bases his contention that decedent was engaged in business in the United States at the time of his death solely upon the ground that decedent was the sole stockholder of the Central Cuba Sugar Co., which was incorporated under the laws of the State of New York in 1911. Only in justifiable instances—and we do not consider this one—have the courts and this Board disregarded the separateness of the corporate entity from its stockholders. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. Therefore we are not persuaded by respondent's argument that the decedent was engaged in business in the United States by reason of the fact that his principal interest—Central Cuba Sugar Co.—obtained and enjoyed a domestic charter. The domestication of a corporation does not domesticate its nonresident stockholders to the extent of causing them to be in business in the United States if they are not otherwise engaged in business in the United States. Furthermore, the suggestion that these funds were deposited in the United States for business purposes therein is refuted by the testimony that they were in the interest of safety and to avoid unstable political tendencies prevalent in Cuba since about 1917. These deposits, under the facts

and circumstances found, have been expressly excepted by the statute from the decedent's gross estate and the respondent's action in including them was erroneous. See *Burnet* v. *Brooks*, 288 U. S. 378; *Fredrick Rodiek, Ancillary Executor*, 33 B. T. A. 1020; affd., 87 Fed. (2d) 328.

The respondent's argument on the final issue, pertaining to the $50,000 contribution made by the decedent to the marital partnership, is that because, as he says, "all of the decedent's holdings were situated in the United States, it necessarily follows that the decedent's contribution of $50,000 to the marital partnership between himself and his wife necessarily had a situs in the United States for the purpose of the Federal estate tax." If in fact all of the property of the conjugal community had been situated in the United States at the time of decedent's death, we think respondent's contention on this point would be correct. We have held however that the principal asset of the community—a bond of the Central Cuba Sugar Co. on which a balance of $3,304,139.22 was due—was situated in the Republic of Cuba.

According to article 1395 of the Civil Code in force in Cuba, "The conjugal community shall be governed by the rules of the contract of partnership * * *." Contracts of partnership are governed by the laws where entered into and where their businesses are conducted. *In re Hoyne*, 277 Fed. 668; *King* v. *Sarria*, 69 N. Y. 24; 25 Am. R. 128; and *Cutler* v. *Thomas*, 25 Vt. 73. This contract of partnership was entered into in and under the laws of the Republic of Cuba, where the relationship was apparently intended to and did in fact continue until the death of decedent. There is nothing in the record from which it might be even slightly inferred that it was ever intended that the situs of this capital would change or that it in fact did change. It is true that some of the fruits of the community partnership were situated in the United States, and it was stipulated by the parties that "from that capital [the $50,000 contribution], the industry, salaries or work of the spouses, profits, rents and interest accruing during marriage from community property and from the property which belongs to either one of the spouses, the assets of said community at the time of the decedent's death were derived." But certainly it can not be said, with any reasonable force, that because some of the fruits of the contribution are situated in the United States for tax purposes, the contribution itself became so situated. The contribution having been made at the domicile of the decedent, under the laws of that domicile, which determined its situs and regulated its administration, and there being nothing in the record nor in the laws of Cuba that are before us indicating that such situs changed, we hold, following the situs test now well established, that

the respondent's inclusion of this item in the decedent's gross estate was erroneous. *Herman A. Holsten, supra; Fredrick Rodiek, Ancillary Executor, supra.* Respondent has cited us to no authority to sustain his position on this point and we know of none.

Reviewed by the Board.

*Decision will be entered under Rule 50.*