Max S. RUBEN, by his parents and
legal representatives Carl RUBEN
and Rachel Ruben, Petitioners,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 89–103V.

United States Claims Court.

Jan. 3, 1991.

Heidi A. Kossuth, Charleston, W. Va.,
for petitioners.

David L. Terzian, with whom were Asst.
Atty. Gen. Stuart M. Gerson, Helene M.
Goldberg, Director, John Lodge Euler, Deputy Director, and Charles R. Gross, Asst.
Director, Washington, D.C., for respondent.

## OPINION

ANDEWELT, Judge.

This is a child vaccine action brought
pursuant to the National Childhood Vaccine
Injury Act of 1986, as amended, 42 U.S.C.
§§ 300aa–1 *et seq.* (West Supp.1990) (the
Act). The Act establishes a program for
payment of compensation for injuries or
death caused by the administration of vaccines. Petitioners, Carl and Rachel Ruben,
as parents and legal representatives of
their 27–year–old son, Max S. Ruben, allege that their son suffered severe injuries
from the administration of a DPT (diphtheria, pertussis, and tetanus) vaccine inoculation. In a September 12, 1990, decision,

Special Master Paul T. Baird found that petitioners had satisfied the statutory requirements and were entitled to a compensation award to cover the costs of Max Ruben's medical treatment and residential care in a group home for the remainder of his life. The special master set annualized costs for the medical treatment and residential care at $160.00 and $59,356.30, respectively. The special master ordered respondent to purchase an annuity, which, in effect, would provide for payment of these sums each year until Max Ruben's death.

Pursuant to 42 U.S.C. § 300aa–12(e)(1), petitioners filed a timely notice seeking review in this court of the special master's decision. The sole issue herein is whether the special master erred in ordering that the compensation award be made in the form of an annuity. Petitioners argue that instead of an annuity, they should have received a lump sum payable in four annual installments.

## I.

The special master's authority to grant an award in the form of an annuity is contained in Section 2115(f)(4)(B) of the Act, which states:

> In the case of a payment of compensation under the Program to a petitioner for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart the compensation shall be determined on the basis of the net present value of the elements of compensation and paid in 4 equal annual installments *of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner.*

42 U.S.C. §§ 300aa–15(f)(4)(B) (emphasis added).

■ The initial dispute herein relates to the phrase "with the consent of the petitioner." Section 2115(f)(4)(B) authorizes the payment of an award in four equal annual installments. In addition, it autho-

rizes two alternative uses of the proceeds—all or a portion of the proceeds "may [ (1) ] be used as ordered by the special master to purchase an annuity or [ (2) ] otherwise be used, with the consent of the petitioner." Petitioners argue that the prepositional phrase "with the consent of the petitioner" applies to both of these alternative uses, *i.e.*, that the special master must obtain the consent of the petitioner either to order the purchase of an annuity or if the proceeds are "otherwise ... used." Since petitioners have never consented to use of the proceeds for an annuity, petitioners argue that the special master lacked authority to order the purchase of an annuity.

But the wording of the statute appears intentionally to establish different standards for each of the two separately stated alternative uses of the proceeds. For the first alternative—the purchase of an annuity—the statute refers to an "order[ ] by the special master." After stating the second alternative—the use of the proceeds in any other way—the statute refers to "the consent of the petitioner." The verb "order" means "to command." *Webster's Third New International Dictionary* 1588 (3rd ed. 1976). The verb "consent" involves a very different concept. This juxtaposition of "order" and "consent" in the statute indicates that the two listed alternatives should be viewed as distinct and that the imposition of an annuity requires only an order of the special master and not the consent of the petitioner.

Indeed, if Congress intended to create identical requirements for all alternative uses of the proceeds, it reasonably would be expected to have said so in a straightforward manner. For example, in place of the underscored portion of the statute cited above, Congress simply could have stated: "and, with the consent of the petitioner, all or a portion of the proceeds may be used in any manner determined by the special master to be in the best interests of the petitioner." Instead, Congress chose (1) to employ the verb "used" twice (and thereby specify two distinct uses of the proceeds), (2) to specify the purchase of an annuity as one of those uses, and (3) to establish dis-

tinct standards for the special master's selection of each alternative use.

There is nothing in the legislative history to suggest a contrary interpretation.[1] Nor does this interpretation produce a result that Congress reasonably could not have intended. Section II below describes significant potential benefits that result when an award is made in the form of an annuity. In the context of these benefits, it certainly is plausible that Congress intended to give the special master discretion to order the purchase of an annuity and to require the petitioner's consent only when the special master resorted to "other uses," the potential benefits of which Congress had not specifically considered.

■ Additionally, interpreting Section 2115(f)(4)(B) so as not to require the petitioner's consent to an annuity is supported by the general rules of statutory construction. First, the two alternatives mentioned in the statute are connected by the term "or"—"the proceeds may be used as ordered by the special master to purchase an annuity *or* otherwise be used, with the consent of the petitioner." (Emphasis added.) Generally, the term "or" functions grammatically as a coordinating conjunction and joins two separate parts of a sentence. 2 G. Curme, *A Grammar of the English Language, Syntax,* 161 (1986). The ordinary rule is that unless a strict grammatical construction frustrates legislative intent, the term "or" is given a disjunctive interpretation. *Florsheim Shoe Co., Div. of Interco, Inc. v. U.S.,* 744 F.2d 787, 795 (Fed.Cir.1984); *United States v. Moore,* 613 F.2d 1029, 1040 (D.C.Cir.1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980); *George Hyman Constr. Co. v. Occupational Safety & Health Review Comm'n,* 582 F.2d 834, 840 n. 10 (4th Cir.1978). A disjunctive interpretation results in the term "or" "connecting two members [of the sentence] but disconnecting their meaning, the meaning in the second member excluding that in the first." 2 G. Curme, *A Grammar of the English Language, Syntax* 166 (1986). Interpreting the term "or" in Section 2115(f)(4)(B) as disjunctive here would tend to support the special master's discretion to award an annuity without the petitioners' consent in that the two pertinent parts of the statute, before and after the word "or," would be treated as disconnected.

■ Second, the doctrine of the last antecedent, also used in statutory construction, supports the special master's interpretation of Section 2115(f)(4)(B). That doctrine provides that "[i]n construing statutes, qualifying phrases are generally applied to the immediately preceding phrase and not to phrases more remote." *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1350 (9th Cir.1982). *See also Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975); *United States v. Pritchett,* 470 F.2d 455, 459 (D.C.Cir.1972); 2A N. Singer, *Sutherland Statutory Construction §§ 45.01–58.00* § 47.33 at 245 (4th ed. 1984). Applying this doctrine to Section 2115(f)(4)(B) leads to the conclusion that the qualifying phrase "with the consent of the petitioner" applies only to the immediately preceding phrase containing the second alternative—the use of the proceeds in any other way—and not to the more remote phrase containing the first alternative—the purchase of an annuity.

Clearly, courts have allowed exceptions to these general rules of statutory construction. *See, e.g., Willis v. United States,* 719 F.2d 608, 612 (2d Cir.1983) ("It is settled that 'or' may be read to mean 'and' when the context so indicates.") *See also Bingham, Ltd. v. United States,* 724 F.2d 921, 925–26 n. 3 (11th Cir.1984) (in which the court, contrary to *Azure,* did not apply the doctrine of the last antecedent where, as here, a comma set off the modifying phrase from the antecedents). But

---

1. The sole pertinent statement in the legislative history is found in the section-by-section analysis of House Conference Report No. 101–386, which provides: "Paragraph (3) clarifies that in any awards the special master may order the purchase of an annuity or use awarded compensation in a manner determined to be in the best interests of the petitioner...." H.R.Rep. No. 101–386, 101st Cong., 1st Sess. 517 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 3120.

herein there simply is no significant indication, in the words of the statute or its legislative history, to support petitioners' proposed departure from these general rules.

## II.

■ In the alternative, petitioners contend that even if Section 2115(f)(4)(B) were interpreted to give the special master discretion to order an annuity without the petitioners' consent, the special master abused that discretion when ordering an annuity based on the record before him. Pursuant to 42 U.S.C. § 300aa–12(e)(2)(B), the special master's decision in this regard should be affirmed unless this court concludes that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [2]

The special master justified his order of an annuity by stating: "A distinct advantage to the use of an annuity is that it protects the corpus of the award from mismanagement or other waste by the petitioner or his parent or guardian. The court considers it in the best interest of the petitioner to order that compensation be paid in the form of an annuity in this case." *Ruben v. Secretary, HHS,* No. 89–103V, slip. op. at 5, 1990 WL 264131 (Cl.Ct. Sept. 12, 1990). In response, petitioners argue that there is no evidence that petitioner Carl Ruben, who was appointed guardian of Max Ruben by a county court in West Virginia, is "disposed to waste or mismanage the corpus of the award." Indeed, petitioners note that the county court has continuing jurisdiction over the guardianship and that Carl Ruben, who has posted a $10,000 bond, must render an annual accounting of the money spent and is subject to removal for cause.

Clearly, the fact that the state oversees this guardianship provides some level of protection against waste and mismanagement. But the purchase of an annuity reasonably can be viewed as providing greater security for Max Ruben than lump sum payments. Lump sum payments would involve very large amounts of money. Since the state system of protection relies, to a large extent, upon detection of waste or mismanagement after it has occurred, large losses of the trust fund may never be detected or, even if detected, may never be retrieved. An annuity essentially guarantees that for the remainder of Max Ruben's life, periodic payments (typically monthly) will be made equal to the amount the special master has concluded is necessary for Max Ruben's care.[3] The guardian's responsibility as to the payments, therefore, would consist primarily of turning these periodic payments over to the residential care home. A system of guaranteed yearly fixed payments, therefore, would make large losses due to waste or mismanagement less likely and detection of any abuse easier. This increased level of protection for Max Ruben is itself sufficient to support the special master's order of an annuity without any particularized findings that Carl Ruben, who is 64, or any possible successor guardian, is disposed to waste or mismanagement of the corpus. Accordingly, the special master's order of an annuity on the facts before him was not arbitrary, capricious, an abuse of discretion, or contrary to law.[4]

---

**2.** Section 2112(e)(2) states, in pertinent part:
Upon the filing of a motion [to review] with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—
 *   *   *   *   *   *
(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law....

**3.** The United States has purchased annuities from only the highest rated insurance companies. *Gresh v. Secretary, HHS,* No. 89–91V, 1990 WL 270206 (Cl.Ct. Oct. 26, 1990); *Delozier v. Secretary, HHS,* No. 89–49V, 1990 WL 270202 (Cl.Ct. Oct. 10, 1990); *Outlaw v. Secretary, HHS,* No. 89–76V, 1990 WL 270203 (Cl.Ct. Aug. 27, 1990). Petitioners have not contended that the future viability of the insurance companies poses any material risk.

**4.** The purchase of an annuity would appear to be in Max Ruben's personal interest for another reason not specifically cited by the special mas-

## Conclusion

For the reasons set forth above, the special master's September 12, 1990, decision is sustained and the Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

ter. If the proceeds were given in lump sum payments, the amount of those payments would be based on Max Ruben's statistical life expectancy. Thus, the money for Max Ruben's medical and residential care could be expected to run out if he lives longer than his statistical life expectancy. If he dies prematurely, his heirs benefit by inheriting the remainder. On the other hand, with an annuity, the insurance company assumes the risk that Max Ruben will outlive his statistical life expectancy and benefits if he dies prematurely. Thus, with an annuity, Max Ruben's personal interests will be served in that, unlike with lump sum payments, he is assured that money for his care will be available for the remainder of his life.