**Carol A. HUBER and Steve J. Huber, Parents and Next Friends of Garrett Michael Huber, Petitioners,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 89–72 V.

United States Claims Court.

Jan. 8, 1991.

---

Jack Gage, Cheyenne, Wyo., atty. of record for petitioners.

Charles R. Gross, with whom were Gemma Flamberg, Asst. Atty. Gen. Stuart M. Gerson, Director Helene M. Goldberg, and Deputy Director John Lodge Euler, Washington, D.C., for respondent.

## OPINION

WIESE, Judge.

### I

On August 6, 1990, the special master entered a decision in this case awarding compensation to Garrett Michael Huber (a minor) under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act")[1] for injuries suffered as a result of complications from a diphtheria-pertussis-tetanus (DPT) vaccination. The amount of compensation totaled $2,574,786 and was made payable in four equal annual installments of $643,696.50.

Both parties now seek review of the special master's decision.[2] Respondent, the Secretary of the Department of Health and Human Services, objects to inclusion in the award of allowances for family counseling and health insurance premiums. In addition, respondent contends that in determining the mode of payment of the award, the special master should have considered the purchase of an annuity rather than allowing the compensation to be distributed at its present value in four lump-sum payments. Petitioners (Garrett's parents) in turn challenge the correctness of the present value calculations as reflected in the four payment installments.

The briefing of these issues was completed on October 22, 1990 and a hearing with respect to them was held on December 11, 1990. Our resolution follows:

### II

#### Family Counseling Expenses

The special master allowed compensation for "[p]sychological counselling for [the] family, one time per week for 2½ years at $91.50 per hour." Respondent takes issue with the allowance of these family counseling expenses. The contention is that the Vaccine Act does not permit the payment of such expenses because they allegedly confer only an indirect benefit upon the claimant. Says the respondent: "[w]hile psychological counseling may be directly

---

1. Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3743, 3755 (1986), (current version at 42 U.S.C.A. § 300aa–1 *et seq.* (West Supp.1990)).

2. Upon a motion for review by either of the parties to a vaccine case, the Claims Court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 42 U.S.C.A. § 300aa–12(e)(2)(B).

beneficial for the parents in this case, the statute is clear that all compensation must be directly associated with the injured person. Awarding compensation for psychological counseling for the parents of the injured child expands the terms of the statute beyond the class of persons eligible for compensation."

We agree with respondent's statement of the law. The Vaccine Act restricts compensation for a vaccine-related injury to those expenses which "have been or will be incurred by or on behalf of the person who suffered such injury." 42 U.S.C.A. § 300aa–15(b) (incorporating by reference the language found at 42 U.S.C.A. § 300aa–15(a)(1)(A)(ii)). We understand this language to allow only compensation for expenses that have been incurred at the request of or for the immediate benefit of the vaccine claimant. Moreover, except for death benefit payments or loss of earnings compensation (neither of which are of concern here), the compensation that is awarded must relate to the claimant's "health, education or welfare." 42 U.S.C.A. § 300aa–15(d)(2).

■ However, within this statutory framework, counseling that equips parents with the expertise necessary to properly manage their injured child would be an allowable expense. Costs incurred for this purpose satisfy the criteria demanded by the Act: that the cost be incurred by or on behalf of the person who suffered the vaccine-related injury for an expense vital to maintaining that person's welfare. That the parents may also benefit from such counseling is irrelevant; the compensability of the expense is to be evaluated in light of the injury it seeks to redress. By this same standard then, counseling for the sake of the parents' own mental rehabilitation would not be compensable.

It is not clear from the special master's decision, or from the evidence on which he relied, into which of these two categories the parental counseling costs in question fall. Since evaluation of the evidence lies in the first instance within the authority of the special master and not the court, the matter must be returned to that office for a determination in light of the legal standard we have specified.

### Health Insurance Premiums

The special master's decision permitted compensation for "insurance costs including premium, deductible and co-payments" at the rate of $1500 per year through Garrett's twenty-first birthday and continuing thereafter at the rate of $7020 per year. Respondent's challenge to the special master's allowance of these costs rests on the argument that compensation under the Vaccine Act is restricted to specific categories of medical and rehabilitative expenses resulting from the vaccine injury. Since health insurance costs are not among those listed in the Vaccine Act, they are said to be unallowable. Additionally, respondent argues that health insurance, by its very nature, covers risks beyond those relatable to a vaccine injury (for example, routine medical care) and therefore is unallowable on this ground as well.

■ We agree with the argument, but only in part. Respondent is correct in saying that health insurance is not among the specific categories of expense identified in the statute. Nevertheless, we would consider health insurance premiums a permissible item of compensation where the insurance can help cover those medical risks for which compensation would otherwise be allowable under the Act *and* where the insurance is, in fact, a lower-cost alternative to the funding of those risks. The allowance of insurance costs meeting these requirements grants no more than the statute permits and therefore cannot be regarded as an impermissible enlargement of the Act.

On the record before us, it cannot be determined whether the insurance costs in question satisfy the standard we have specified. The special master's decision does not explain the basis for the allowance and the evidence on which he appears to have relied is similarly unrevealing. A remand on this issue is therefore required.

### The Form of the Compensation

The next argument we consider concerns respondent's challenge to the special mas-

ter's conclusion that, in this case, the purchase of an annuity was not a permissible means of carrying out the payment of the compensation award. The argument begins with these words from the special master's decision:

On May 15, 1990 an affidavit was filed in which Garrett's parents agreed to establish a trust fund for any compensation he may receive under the Act. I find that this is reasonable and order that the award be paid out with the understanding that such fund will be established in lieu of an annuity. *While the Act now permits me to order an annuity, this case was filed and heard before the Act was so amended.* The petitioner has formally opposed an annuity but has agreed to a trust. (Underscoring added).

It is the underscored language of the above-quoted text which is the focus of the argument. These words, says respondent, evidence a misunderstanding of the effective date of the current statutory language granting the special master independent discretion to order an annuity. We agree with this argument.

In its current wording, the Vaccine Act says the following with respect to permitting compensation to be paid in the form of an annuity:

compensation shall be determined on the basis of the net present value of the elements of compensation and paid in 4 equal annual installments of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner. [42 U.S.C.A. § 300aa–15(f)(4)(B).]

As indicated in his decision, the special master would view the present statutory language as authorizing him to order the purchase of an annuity even in the absence of a petitioner's concurrence. We concur with this interpretation of the statute.[3] However, the special master did not consider this case subject to the Act's present language because, as he put it, "this case was filed and heard before the Act was so amended." In other words, the special master considered this case to be subject to the pre-amendment language of the Act (the Act as initially promulgated) which omitted any reference to the purchase of an annuity.[4]

█ The special master was mistaken in his understanding of the effective date of the language now found at 42 U.S.C.A. § 300aa–15(f)(4)(B). That language was made a part of the Vaccine Act through amendments introduced by the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6601, 103 Stat. 2106, 2285 (December 19, 1989). Section 6601(s)(1) of this Act introduced a number of changes to the Vaccine Act some of which were indeed confined in their applicability to pending cases in which the evidentiary record had not been closed. Pub.L. No. 101–239, § 6601(s)(1), 103 Stat. at 2293. This apparently was the legislative instruction which guided the special master. However, Section 6601(s)(2) specifies that "[t]he amendments to section 2115 of the Public Health Service Act [42 U.S.C. § 300aa–15] shall apply to all pending and subsequently filed petitions." Pub.L. No. 101–239, § 6601(s)(2), 103 Stat. at 2293.

In view of this language, the question whether the record in this case had been

---

3. A comprehensive analysis of the special master's statutory authority to order the purchase of an annuity without petitioner's consent appears in *Ruben v. Secretary of the Dept. of Health and Human Services*, 22 Cl.Ct. 264 (1991). This court is in full agreement with the views stated in the *Ruben* decision.

4. As originally promulgated, the Vaccine Act contemplated two different payment schemes, depending on the date of occurrence of the vaccine injury. For a vaccine-related injury or

death associated with the administration of a vaccine after October 1, 1988 (the Act's effective date), compensation was to be made "in a lump sum determined on the basis of the net present value of the elements of the compensation." 42 U.S.C. § 300aa–15(f)(4)(A) (1988). However, for a vaccine-related injury or death occurring prior to October 1, 1988, the compensation awarded was to be "paid in 4 equal annual installments." 42 U.S.C. § 300aa–15(f)(4)(B). Neither section permitted the direct funding of an annuity, as is now the case.

closed to the receipt of further evidence is irrelevant. So long as the case had not been decided on the effective date of the amending language (December 19, 1989)— and this case had not been decided by that date—it was a "pending" case and thus subject to the language amending 42 U.S. C.A. § 300aa–15(f). By the terms of that language, the special master was authorized to consider the advisability of an annuity. That he did not do so in the mistaken belief that he could not do so renders the decision wrong as a matter of law.

On remand, the special master must take up the question whether an annuity is appropriate for all or any part of the compensation award. If the special master orders any part of the compensation to be placed in a trust (either in lieu of or in conjunction with an annuity), then he shall specify the trust to be (i) irrevocable and (ii) managed by an independent corporate trustee meeting the highest standards of financial and managerial integrity as determined by qualified, independent industry appraisers.[5]

### The Amount of the Compensation

■ The final matter in dispute concerns petitioners' attack upon the special master's computation of the net present value of the elements of compensation. Under the terms of the Vaccine Act, the payment of compensation due a claimant "shall be determined on the basis of the net present value of the elements of compensation." 42 U.S.C.A. § 300aa–15(f)(4)(A)–15(f)(4)(B). Additionally, where the injury being compensated is one that occurred prior to the effective date of the Vaccine Act (the case here), the Act specifies that the present value is to be "paid in 4 equal annual installments." 42 U.S.C.A. § 300aa–15(f)(4)(B). In accordance with these statutory directives, the special master reduced the total amount of awarded compensation to a present value of $2,574,-786 payable in four annual installments of

$643,696.50. The argument we are now asked to consider focuses on the amount of each installment.

Petitioners contend that compensation, when paid out over a four year period, cannot amount to present value unless the amount of each installment is increased to compensate for the delay in its receipt. Thus, petitioners would have us increase the amount of each installment payment to compensate for the delay.

As a matter of mathematics, petitioners unquestionably are correct; as a matter of statutory language, they are not. The statute does not direct the payment of present value per se, rather, it directs that the amount determined as present value be "paid in 4 equal annual installments." Present value and the payment of present value in four equal installments are not economic equivalents and there is no reason to suppose that Congress was not aware of the difference. "[S]tatutory words are presumed to be used in their ordinary and usual sense...." *DeGanay v. Lederer*, 250 U.S. 376, 381, 39 S.Ct. 524, 525, 63 L.Ed. 1042 (1919).

Indeed, in the parallel section of the statute dealing with injuries occurring after the effective date of the Act, 42 U.S.C.A. § 300aa–15(f)(4)(A), Congress directed that the amount determined as present value be "paid.... in a lump sum." This contrast in payment schemes occurring within the same statutory section is the plainest indication that Congress well understood—and intended—the economic difference between present value paid in 4 equal annual installments and present value paid in a lump sum. To heed petitioners' argument would make the two sections of the statute economic equivalents and thus render their difference in wording meaningless. Accepted canons of statutory construction counsel against such a result. "One portion of a statute should not be construed to

---

**5.** Placing funds directly in the hands of a petitioner, as the special master had proposed to do in this case, is to be permitted *only* in those rare situations where a petitioner demonstrates proven investment skills. Those skills involve the management of a fund that will be expected to remain relatively intact over a vaccine claimant's lifetime while, at the same time, generating the income necessary to meet the claimant's medical needs. These are not skills one should assume the average person possesses.

annul or destroy what has been clearly granted by another." *Peck v. Jenness*, 48 U.S. (7 How.) 320, 325, 12 L.Ed. 841 (1848).

We conclude that the special master was correct in his determination of the amount due in each payment.

### III

The case is returned to the special master for further action consistent with this opinion.