**Christina LEUNG, as legal representative of Jennifer Leung, a minor, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–137V.

United States Claims Court.

June 7, 1991.

Andrew Dodd, Torrence, Cal., for petitioner.

Michael Milmoe, Dept. of Justice, Washington, D.C., for respondent.

## OPINION

FUTEY, Judge.

This vaccine case is before the court on cross-motions for review of the special master's decision.[1] In her decision, the special master awarded petitioner compensation for a vaccine-related injury in the form of an annuity except for a $10,000.00 "one-time up-front allotment." Petitioner contends that this lump sum is "woefully inadequate" and maintains that the special master's decision to award on an annuity basis was arbitrary and capricious. Respondent asserts that the special master acted contrary to law by including the $10,000.00 "contingency fund" in the compensation award.

### Factual Background

Jennifer Leung (Jennifer) was born in San Jose, California, on December 26, 1984. She received a diphtheria-pertussis-tetanus (DPT) vaccination on May 29, 1985. Approximately 5 hours after this vaccination, Jennifer developed a 99.4 degree Fahrenheit temperature. Jennifer experienced a left-sided focal seizure some 18 hours after the vaccination. One hour later, she suffered a second seizure on her right side which became generalized and lasted 45 minutes. Jennifer subsequently developed a seizure disorder characterized by intractable seizures, mental retardation, and behavioral problems.

Petitioner, Christina Leung, commenced an action in this court on February 12, 1990, under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. § 300aa–1 *et seq.* (West Supp.1990) (Vaccine Act), requesting compensation for the vaccine-related injury of Jennifer, her minor daughter. On March 23, 1990, respondent conceded that Jennifer's condition was presumptively vaccine-related. The special master held an evidentiary hearing on November 19, 1990, to determine the future unreimbursable medical and other expenses to which petitioner was entitled under the Vaccine Act. Petitioner requested the special master to award compensation in the form of a lump sum payment in four equal annual installments. In the alternative, petitioner requested that a substantial portion of the total award be paid in a lump sum.[2]

The special master issued a decision on March 5, 1991, making the following findings:

(1) On May 29, 1985, Jennifer received a (DPT) vaccine listed in the Vaccine Injury Table in San Jose, California.

(2) Jennifer sustained encephalopathy and residual seizure disorder within the prescribed time limits under the Vaccine Act.

(3) Jennifer's injuries lasted for more than six months and petitioner has incurred more than $1,000.00 in unreimbursed medical expenses.

(4) There is not a preponderance of the evidence that Jennifer's injuries were occasioned by factors unrelated to the DPT vaccination.

---

1. This Opinion may contain material which should not be disclosed to a nonparty pursuant to 42 U.S.C. § 300aa–12 (1987). The parties shall therefore designate, within 14 days from the date of the Opinion, any material subject to § 300aa–12. Said material will be deleted from the Opinion prior to public distribution. If neither party files objections within this 14–day period, the court will assume that the Opinion contains no material subject to § 300aa–12.

2. See "Petitioner's Submission in re Method of Payment of Award Herein."

The special master next determined the compensation due petitioner in accordance with section 2215(a)(1)(A) of the Vaccine Act. The special master compensated petitioner by way of annuity,[3] determining that this method of payment "will be in Jennifer Leung's best interests and will also be the most appropriate and practical vehicle to guarantee a future stream of payments for the approved items of cost." *Leung v. Secretary DHHS,* Cl.Ct. No. 90–137V, spec. master slip op. at 14 (March 5, 1991). The special master also awarded petitioner a "one-time up-front allotment" of $10,-000.00. This lump sum amount was designed to "cover any unexpected occurrences or unplanned expenditures such as fluctuations in the interest rates[4] or the possibility that petitioner's husband should become unemployed and without health insurance for a period of time...." *Id.* at 13–14

On April 3, 1991, petitioner filed timely notice with this court seeking review of the special master's decision. Petitioner avers that the $10,000.00 up-front allotment is wholly inadequate and contends that the special master should have compensated petitioner in a lump sum award. On April 4, 1991, respondent also filed a timely motion for review, asserting that the special master erred in awarding petitioner a $10,-000.00 "contingency fund." Respondent does not contest petitioner's entitlement to compensation under the Vaccine Program. In addition, petitioner does not contest the total amount awarded to Jennifer by the special master. Therefore, the court is asked only to consider whether the special master erred in: (1) ordering that petitioner be compensated in the form of an annuity; and (2) awarding petitioner a $10,000.00 "one-time up-front allotment."

*Discussion*

**A. Standard of Review**

Section 300aa–12(e)(2) of the Vaccine Act, as amended, provides in relevant part:

(2) Upon filing of a motion [for review of a special master's decision] with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(a) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision;

(b) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(c) remand the petition to the special master for further action in accordance with the court's direction.

In addition, Rule 5 of the Vaccine Rules, (RUSCC—Appendix J, Section III, *Judge's Review*) mirrors the statutory language set forth above.

 In reviewing the special master's decision, the court may, therefore, set aside findings of fact and conclusions of law which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Brown v. Secretary DHHS,* 920 F.2d 918 (Fed.Cir.1990); *Hines v. Secretary DHHS,* 21 Cl.Ct. 634 (1990). Under this standard of review, the court may not substitute its judgment for that of the special master. *Fricano v. United States,* 22 Cl.Ct. 796 (1991). Rather, the court may only overturn the findings and conclusions reached below where review of

---

**3.** The special master established the following annualized costs:

| Period | Total Annual Costs |
| --- | --- |
| 1991–97 | $23,003.32 |
| 1998–2001 | $16,418.44 |
| 2002–2006 | $14,101.00 |
| 2007–2021 | $38,625.00 |
| 2022+ | $40,076.00 |

The special master ordered respondent to purchase an annuity to provide for the payment of the above amounts, with premiums to be paid in four equal annual installments, and monthly payments commencing one month from the date the first premium payment is made, until the death of petitioner. *Leung v. Secretary DHHS,* No. 90–137V, spec. master slip op. at 15, Attachment A, 1991 WL 37088 (March 5, 1991).

**4.** In fact, the special master awarded an annuity which assumed a 5 percent inflation factor compounded annually.

the record reveals that no rational basis exists for the decision. *Hyundai Electronics Industries Co. v. United States Int'l Trade Comm.*, 899 F.2d 1204, 1209 (Fed.Cir.1990).

### B. *Annuity Award*

■ Section 2115(f)(4)(B) of the Act authorizes the special master to award compensation in the form of an annuity:

> In the case of a payment of compensation under the Program to a petitioner for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart the compensation shall be determined on the basis of the net present value of the elements of compensation and paid in 4 equal annual installments of which all or a portion of the proceeds may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner.

42 U.S.C. §§ 300aa–15(f)(4)(B).

This section does not require the special master to obtain consent of the petitioner to order the purchase of an annuity. *Ruben v. Secretary DHHS*, 22 Cl.Ct. 264, 265–267 (1991); *Huber v. Secretary DHHS*, 22 Cl.Ct. 255, 258 (1991). Rather, § 2115(f)(4)(B) affords the special master broad discretion to grant an annuity award notwithstanding the preference of petitioner. In this regard, the special master's decision must be affirmed unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2).

> In her opinion, the special master stated: The undersigned has determined that an annuity will be in Jennifer Leung's best interests and will also be the most appropriate and practical vehicle to guarantee a future stream of payments for the approved items of cost.

*Leung,* slip op. at 14.

The special master further commented:

> While petitioner has requested compensation in the form of a lump sum payment in four equal annual installments, or, alternatively, that a significant amount of the award be made in the form of a lump sum, the undersigned is not convinced from the record that Jennifer's best interest would be served by such a mechanism of payment.

*Id.* at 14, n. 32.

Petitioner does not question the special master's authority to award compensation by way of annuity. Instead, petitioner asserts that there is no evidence to support the special master's conclusion that an annuity award would best serve Jennifer's interest.

This court has stated previously that "[p]lacing funds directly in the hands of a petitioner ... is to be permitted *only* in those rare situations where a petitioner demonstrates proven investment skills." *Huber,* 22 Cl.Ct. at 259, n. 5. Thus, award by way of annuity is the general rule rather than the exception. The rationale behind such a rule is to protect the corpus of the trust from waste or mismanagement by ensuring investment in a safe and profitable manner. *Ruben,* 22 Cl.Ct. at 267. In addition, an annuity guarantees petitioner a steady stream of lifetime income and places the risk of Jennifer outliving her statistical life expectancy on the insurance company. *Ruben,* 22 Cl.Ct. at 266–67, n. 4. Furthermore, the special master may draw on his or her expertise in determining the best method of compensation for children injured by vaccines. Given the recognized advantages of compensating by way of annuity, the special master may find it unnecessary to elicit testimony or otherwise take other evidence before deciding that an annuity approach is in the best interest of the child. *Loe v. Secretary DHHS,* 22 Cl.Ct. 430, 434 (1991). In short, the court cannot conclude that the special master's decision that an annuity "would best guarantee a future stream of payments" to compensate petitioner was arbitrary, capricious, or an abuse of discretion.

### C. *Contingency Fund*

■ The special master granted petitioner a $10,000.00 up-front award as "a rea-

sonable amount to cover any unexpected occurrences or unplanned expenditures such as fluctuations in the interest rates or the possibility that petitioner's husband should become unemployed and without health insurance for a period of time...." *Leung,* slip op. at 13–14. Unanticipated fluctuations in the interest rate are not "reasonably projected" expenses. Further, there is insufficient evidence in the record to conclude that there is a substantial likelihood that petitioner will not have access to health insurance in the future. Therefore, the $10,000.00 award is designed to provide for unforeseen contingencies and is most appropriately described as a contingency fund. Petitioner contends that this amount is insufficient while respondent asserts that the special master is not authorized to award a "contingency fund" under the Act.

▪ Section 2215(a)(1)(A) of the Vaccine Act provides in relevant part:

Compensation awarded under the Program ... shall include the following:

(1)(a) Actual unreimbursable expenses incurred from the date of the judgment awarding such expenses and reasonable projected unreimbursable expenses which

(i) result from the vaccine-related injury for which the petitioner seeks compensation,

(ii) have been or will be incurred by or on behalf of the person who suffered such injury, and

(iii)(I) have been or will be for diagnosis and medical or other remedial care determined to be reasonably necessary, or

(II) have been or will be for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary.

42 U.S.C. § 300aa–15(a)(1)(A).

Section 2215(a)(1)(A) provides a comprehensive list of allowable expenses under the Vaccine Act. The statute requires that award be limited to enumerated expenses which "have or will be" incurred by the petitioner. *Potter v. Secretary DHHS,* 22 Cl.Ct. 701, 704 (1991). This court may not sustain a decision by a special master awarding compensation for expenses not specified in the Vaccine Act. *Hulsey v. Secretary DHHS,* 19 Cl.Ct. 331, 334 (1990).

In *Potter,* the court considered whether the Vaccine Act contemplates award of a contingency fund. The court reasoned correctly that the creation of a new compensation category by the special master is subject to more stringent review than compensation allegedly predicated on an expense enumerated by the statute. In setting aside the contingency fund award, the court remarked: "Congress listed over ten types of unreimbursed future expenses frequently incurred in vaccine injury cases. A contingency fund for excess inflation is not an included expense, and, therefore, no legal basis for an award of a contingency fund is present in the Act." *Potter,* 22 Cl.Ct. at 705.

In accordance with *Potter,* the court concludes that the Vaccine Act does not authorize the award of a contingency fund. The "one-time up-front allotment" does not "augment an inadequate annuity." Rather, the fund compensates petitioner for uncertain future expenses not within the purview of the Act. As such, "the Claims Court is without authority to ignore the legislative scheme and let the award stand." *Id.* at 704, *citing Hulsey,* 19 Cl.Ct. at 334. Consequently, the special master erred in awarding petitioner a $10,000.00 contingency fund.[5]

### Conclusion

For the foregoing reasons, the decision of the special master to provide petitioner with a $10,000.00 one-time up-front allotment/contingency fund is set aside. In addition, the court determines that the spe-

---

**5.** Since the special master had no legal basis for awarding a contingency fund, the court need not address petitioner's contention that the $10,000.00 "one-time up-front allotment" is inadequate.

cial master did not commit an abuse of discretion in granting award in the form of an annuity. The Clerk is directed to enter judgment in favor of petitioner in accordance with the decision of the special master as modified. No costs.